OPINION OF THE COURT
Wachtler, J.
In both cases consolidated on this appeal the teachers associations demanded arbitration of related grievances covered by specific provisions of its collective bargaining agreement with the school district. Although an arbitrator would concededly be empowered to interpret those provisions of the contract, the school district commenced these proceedings to stay arbitration on the ground that the relief sought by the association, if granted by the arbitrator, would be against public policy. Because a stay in either case would foreclose any remedy for alleged violations of procedural guarantees as well as substantive rights said to be afforded under the contract, the appeal itself raises policy questions of importance to the arbitration process.
*416 In 1973 the parties entered into a collective bargaining agreement covering a five-year period. Article II A of the agreement sets up a number of joint committees, comprised of administrative and association representatives, to consider and make recommendations on various subjects including evaluations for advanced status, extra assignments and curriculum development. The article states that "a recommendation of any joint committee * * * shall be advisory * * * and may be accepted or rejected, in whole or in part, by the Superintendent.”
The agreement further provides for a resolution of grievances including: "a complaint by an instructional employee that (1) there has been as to him a violation, misinterpretation or inequitable application of any of the provisions of this Agreement.”
The final step in the grievance procedure provides for submission to arbitration: "A grievance dispute which was not resolved at Step 2 under the grievance procedure may be submitted by the aggrieved party to an arbitrator for a binding ruling if it involves the application or interpretation of this Agreement. The arbitrator shall have the power only to interpret what the parties to the Agreement intended by the specific clause in the Agreement which is at issue.” The committee system apparently broke down on a number of occasions.
In the first case the school district implemented an educational program without first submitting it to the committee. In addition the district instructed its representatives on the committee not to participate in any discussion or vote with respect to the educational program. The teachers association filed a grievance claiming that this conduct on the part of the school district violated the terms of the agreement by not following the contractually prescribed procedures. They claimed that the agreement required the district to submit any change of this nature to the committee and also required the district representatives to participate in discussion and deliberation concerning the new educational program before its implementation.
The teachers ultimately sought arbitration and demanded that the district: "Cease and desist from the implementation of programs that have not been approved in the [sic] accordance with procedures set forth in Article II, a. that the District direct its administrators who are Committee mem *417 bers, to participate in the deliberations and voting of the Professional Growth & Curriculum Committee.”
The district commenced this proceeding to stay arbitration claiming that the relief demanded would, if granted, deprive the school district of its control over the curriculum and thereby violate public policy.
The Appellate Division held that contrary to the district’s position, a permanent stay of arbitration would not be warranted by the mere possibility that the demand’s additional request for termination of "unapproved” programs, if granted following arbitration of the dispute, might be subject to vacatur under CPLR 7511 on the ground that the arbitrator exceeded his power.
In the second case the school district successfully sought to stay arbitration of related grievances involving similar unilateral actions by the superintendent, here his reduction of certain extracurricular activities and assignments purportedly for economic reasons. But in this case the demand for relief went further, in essence requesting annulment of the contested unilateral action, plus restoration of the eliminated activities and back pay for teachers affected by the cutbacks. The majority below granted a stay on the assumption that the association’s demand could only be granted by either giving the joint committee on extracurricular programs a right of prior approval or by requiring the district to maintain the status quo until a properly constituted joint committee was to arrive at a recommendation for the superintendent’s further consideration. In the Appellate Division’s view this would be an impermissible delegation of supervisory responsibility in either event (see Education Law, § 1709).
Arbitration should be permitted to proceed in both cases. It is conceded in these cases that there is a dispute over the meaning or interpretation of the agreement and that the controversy is therefore arbitrable under the agreement. The school district’s sole contention is that arbitration should be stayed because the relief demanded if granted would violate public policy.
The courts may intervene in a dispute which the parties had agreed to arbitrate where the arbitrators could not grant any relief without violating public policy (Board of Educ. v Areman, 41 NY2d 527); however that power to intervene is restricted. In the present context it is generally limited by the principle, that although a school district’s authority under the *418 decisional and Education Law may not be bargained away or otherwise delegated, "[f|or purposes of our review, the violations of the procedural and substantive aspects of the [contested contract provisions] must be treated discretely” (Matter of Candor Cent. School Dist. [Candor Teachers Assn.], 42 NY2d 266, 271; see, also, Matter of Cohoes City School Dist. v Cohoes Teachers Assn., 40 NY2d 774, 778). For example while we have held that a board of education may not surrender its ultimate responsibility for making tenure decisions or restrict its exclusive right to terminate probationary appointments at the close of the probationary period, on the other hand "the bargained-for right to supplemental procedural steps preliminary to the board’s final action to grant or to withhold tenure is not to be rendered a nullity because of the board’s right to deny tenure without explanation” (Matter of Cohoes City School Dist. v Cohoes Teachers Assn., supra, p 778).
In applying this concept to other claims of improper delegation first raised in judicial proceedings to stay arbitration of otherwise arbitrable disputes, it becomes necessary to consider the fact that labor arbitrators, even in the public sector, are "not strictly limited to remedies requested by the parties” (Board of Educ. v Bellmore-Merrick United Secondary Teachers, 39 NY2d 167, 172); on the contrary, arbitrators in this context are in the final analysis empowered to "do justice and the award may well reflect the spirit rather than the letter of the agreement” (Rochester City School Dist. v Rochester Teachers Assn., 41 NY2d 578, 582; Lentine v Fundaro, 29 NY2d 382, 386).
For these reasons in both cases at bar, even though the full scope of relief in precisely the form demanded by the teachers association might, if granted in toto by the arbitrator, ultimately lead to an award which would be subject to vacatur this consideration does not, standing alone, justify judicial interference with the arbitration process at this stage. The arbitrator’s broad power to fashion appropriate relief may therefore not be presumed in advance to necessarily entail public policy conflicts discernable in the abstract by the courts. It follows that where the relief sought is broader than any enforceable remedy that may prospectively be granted but may also be adequately narrowed to encompass only procedural guarantees, as in these cases, a stay of arbitration on policy grounds is premature and unjustified.
The arbitration demands at issue here cannot be said to *419 lead inexorably to the delegation problems urged by the school district. Far from interfering with matters of educational policy, appropriate enforcement of the advisory procedures to which the school district committed itself in both of the cases now before us may well signal instead the advancement of these goals and at the very least the resolution of pending controversies in the forum agreed upon by the parties. Should the arbitrator’s exercise of remedial discretion end in perceived policy conflicts, review by the courts will not have to rest on speculation or assumption.
Accordingly, the order of the Appellate Division in the first case captioned on this appeal should be affirmed and in the second reversed, without costs, and the motion for a permanent stay of arbitration denied.