■ In the Matter of WYANDANCH UNION FREE SCHOOL DISTRICT, Respondent, v WYANDANCH TEACHERS ASSOCIATION, Appellant.—In a proceeding to stay arbitration, the appeal is from so much of a judgment of the Supreme Court, Suffolk County, dated June 13, 1978, as granted the application as to two grievances. Judgment modified, on the law, by deleting so much thereof as stayed arbitration of the first grievance contained in the demand dated November 14, 1977 and substituting therefor a provision denying the application for a stay as to said grievance. As so modified, judgment affirmed insofar as appealed from, without costs or disbursements, and the parties are directed to proceed to arbitration of the first grievance contained in the demand dated November 14, 1977. Prior to September, 1977, bright students and slow students in the Wyandanch Union Free School District were "tracked", i.e., grouped together in classes according to academic ability. At the beginning of the 1977-1978 school year, the school

administration introduced a new program whereby bright students and slow students were mixed together in the classroom (heterogeneous student grouping). Article 3 (subd E, par [1]) of the parties' collective bargaining agreement required the administration to give the teachers 30 days' notice of new educational programs and provided for consideration of the proposals by a "Professional Council", which was advisory only. With regard to the heterogeneous grouping, the notice was not given and no action was taken by the Professional Council. The teachers association, in its demand for arbitration of the failure to follow the notice and advice procedures, sought to compel the school district to "re-establish former educational program and curricula, pending revisions thereto, in accordance with the provisions of the contract." In *Matter of Port Washington Union Free School Dist. v Port Washington Teachers Assn.* (45 NY2d 411, 418), decided shortly after the judgment herein was entered, the Court of Appeals explicitly rejected the notion that arbitration in a dispute between a public school district and a teachers organization should be stayed merely because the requested remedy, if granted, might result in an impermissible delegation of the board of education's supervisory responsibility under the Education Law. The facts in *Port Washington* are strikingly similar to those involving the instant grievance. The parties there entered into a collective bargaining agreement which set up a number of joint committees to consider and make advisory recommendations on various subjects, including curriculum development. In one instance the Port Washington Union Free School District implemented an educational program without first submitting it to the joint committee. After reviewing the concept of "public policy" as it affects arbitration in the public sector, the court concluded (p 418): "The arbitration demands at issue here cannot be said to lead inexorably to the delegation problems urged by the school district. Far from interfering with matters of educational policy, appropriate enforcement of the advisory procedures to which the school district committed itself in both of the cases now before us may well signal instead the advancement of these goals and at the very least the resolution of pending controversies in the forum agreed upon by the parties. Should the arbitrator's exercise of remedial discretion end in perceived policy conflicts, review by the courts will not have to rest on speculation or assumption." Thus, the implication in the opinion at Special Term, that arbitration of the dispute would necessarily result in a limitation of petitioner's statutory power to establish a new educational program, is inconsistent with "the fact that labor arbitrators, even in the public sector, are 'not strictly limited to remedies requested by the parties' *(Board of Educ. v Bellmore-Merrick United Secondary Teachers,* 39 NY2d 167, 172)" *(Matter of Port Washington Union Free School Dist. v Port Washington Teachers Assn., supra,* p 418). In our opinion, insofar as the grievance involving a new educational program is concerned, the instant case is one where the relief sought may be "adequately narrowed to encompass only procedural guarantees". Here, as in *Port Washington (supra,* p 418), a stay of arbitration on policy grounds is "premature and unjustified." With respect to the demand dated November 23, 1977, we agree with the finding at Special Term that the grievance involving "unit plans" does not come within the scope of the parties' agreement to arbitrate. In a "Memorandum of Agreement" dated September 6, 1977, the parties amended their collective bargaining agreement to provide for new tasks to be performed by teachers in the 1977-1978 school year. Paragraph 9 of the memorandum provides conditionally for the assignment of a new sixth teaching period and for the elimination of a "duty period" in the event that all high school students should receive an

additional class. Otherwise, paragraph 9 maintains the *status quo* as to the number of teaching periods. Paragraph 10 requires elementary school teachers to conduct a parent conference with all parents at least once during the school year; two hours per month beyond normal hours are also required for "curriculum development." The memorandum incorporates the terms of the collective bargaining agreement, which permits arbitration of "any dispute concerning the meaning, interpretation or application of this agreement." In the demand for arbitration, the teachers alleged that the new requirement violated the collective bargaining agreement, as amended in September, 1977, and requested compensation for all affected teachers for the time spent in preparing the unit plans. In *Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. (United Liverpool Faculty Assn.)* (42 NY2d 509, 513-514), the Court of Appeals articulated the standard on which we must rely in determining the scope of the instant agreement to arbitrate: "it cannot be inferred as a practical matter that the parties to collective bargaining agreements in the public sector always intend to adopt the broadest permissible arbitration clauses. Indeed, inasmuch as the responsibilities of the elected representatives of the tax-paying public are overarching and fundamentally nondelegable, it must be taken, in the absence of clear, unequivocal agreement to the contrary, that the board of education did *not* intend to refer differences which might arise to the arbitration forum. Such reference is not to be based on implication" (emphasis in original). A determination of the instant arbitration clause turns on whether the grievance concerning "unit plans" constitutes a "dispute concerning the meaning, interpretation or application of this agreement." Applying the Court of Appeals cautious criteria set forth in *Liverpool (supra),* we find the grievance not arbitrable. The teachers' concern in the "unit plans" grievance centers around the increased amount of time they are required to devote to class preparation. The provisions of paragraphs 9 and 10 of the parties' amended agreement are confined to the number of teaching periods, parent conferences and extra hours to be spent in "curriculum development"; there is no mention, by way of limitation or otherwise, of the amount of time to be devoted to class preparation. Contrary to appellant's contention, the amended agreement is silent on the question of "productivity increases". Thus, the record gives no indication of a clear, unequivocal agreement with respect to "unit plans" which would support the view that the parties intended to submit that grievance to arbitration. Appellant cannot be permitted, simply by invoking the terms of the agreement, without more, to catapult the dispute into arbitration. To do so would be tantamount to allowing a "bootstrap operation" for the sole purpose of obtaining arbitration where it is not otherwise available. Latham, J. P., Suozzi and Cohalan, JJ., concur.

Gulotta, J., concurs insofar as the majority has directed the parties to proceed to arbitration on the first grievance contained in the November 14, 1977 demand, but otherwise dissents and votes to direct the parties to proceed to arbitration on the November 23, 1977 demand, with the following memorandum, in which Shapiro, J., concurs: In my opinion the judgment should be reversed insofar as appealed from and the application to stay arbitration denied as to both grievances in question. The majority is correct in concluding that the first grievance contained in the demand for arbitration dated November 14, 1977 (involving petitioner's alleged violation of certain procedural prerequisites to its adoption of a new "educational program") is arbitrable under the instant agreement (see *Matter of Port Washington Union Free School Dist. v Port Washington Teachers Assn.,* 45

NY2d 411; see, also, *Matter of Port Jefferson Sta. Teachers Assn. v Brookhaven-Comsewogue Union Free School Dist.,* 45 NY2d 898; *Matter of Board of Educ. v Merrick Faculty Assn.,* 65 AD2d 136). It is my belief, however, that the third grievance contained in the demand for arbitration dated November 23, 1977 (the only other grievance whose arbitrability has been raised on appeal) should also be considered arbitrable, as it is the teachers' position that the district's newly imposed requirement that they compose written "unit plans" without additional compensation is violative of article 3 (subd E, par [1]) of the collective bargaining agreement (as amended by the "Memorandum of Agreement" dated Sept. 6, 1977). That contract also provides for the arbitration of "grievances", which are defined to include "any dispute concerning the meaning, interpretation or application of this agreement." Since the "work load" of the teachers was a permissible subject of negotiation under the Taylor Law, and since the agreement to arbitrate is sufficiently broad in scope to include the question of whether the assignment of this "new task" was violative of the cited contract provision, it is my opinion that the grievance should be permitted to proceed to arbitration (see *Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. [United Liverpool Faculty Assn.],* 42 NY2d 509; see, also, *Matter of Board of Educ. v Merrick Faculty Assn., supra).* The viability of this particular grievance under the terms of the collective bargaining agreement is not properly before us at this juncture, as CPLR 7501 provides, *inter alia:* "In determining any matter arising under this article, the court shall *not* consider whether the claim with respect to which arbitration is sought is tenable, or otherwise pass upon the merits of the dispute" (emphasis supplied). The command of the statute is thus abundantly clear and precludes us from considering the merits of the underlying grievance on this application for a stay.