BOARD OF EDUCATION OF LAKELAND CENTRAL SCHOOL DISTRICT OF SHRUB OAK, Respondent, v JOSEPH BARNI, as President of Lakeland Federation of Teachers, Appellant.

Second Department, February 5, 1979

### APPEARANCES OF COUNSEL

*James R. Sandner (Jeffrey S. Karp* of counsel), for appellant.

*Murray Steyer* for respondent.

### OPINION OF THE COURT

SHAPIRO, J.

The petitioner-respondent Board of Education (Board) and the respondent-appellant, as President of Lakeland Federation of Teachers (Federation), negotiated a collective bargaining agreement for the period July 1, 1973 to June 30, 1976, pursuant to the Taylor Law (Civil Service Law, § 200 *et seq.).* The agreement contained a detailed grievance procedure culminating in final and binding arbitration of unresolved grievances.

Based on observation reports and two annual evaluation summaries, the probationary teacher here involved was dis-

missed by the Board at the end of the second year of his three-year probationary period. That dismissal was not a "denial of tenure", which could only occur at the end of the three-year period.

Pursuant to the procedure set forth in the agreement, the Federation filed a grievance on behalf of the teacher alleging that the termination of his services violated the "just cause" provision contained in paragraph D of article XXV of the agreement. Although it further alleged that the dismissal was in violation of other provisions of the agreement relating to student discipline, teacher protection, teacher evaluation procedures, academic freedom and academic teachers' rights, those provisions are not here in issue. The grievance was denied at each step of the grievance procedure. The Federation thereupon served a demand for arbitration. Upon application of the Board, Special Term stayed the requested arbitration. The judgment should be affirmed.

### THE LAW

■ *Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. (United Liverpool Faculty Assn.)* (42 NY2d 509, 513) determined that two criteria must be met for arbitration of a dispute involving a public sector collective bargaining agreement: (1) the determination of the dispute must be authorized by, and fall within the permissible scope of, the Taylor Law; and (2) the "authority was in fact exercised and * * * the parties did agree by the terms of their particular arbitration clause to refer their differences in this specific area to arbitration". We are concerned here only with the latter requirement.

■ ■ It is undisputed that absent a contrary agreement a probationary teacher may be dismissed at any time during the probationary term *(Matter of Cohoes City School Dist. v Cohoes Teachers Assn.,* 40 NY2d 774; *Matter of Candor Cent. School Dist. [Candor Teachers Assn.],* 42 NY2d 266). In *Cohoes* it was held that although it was against public policy for a board of education to contract away its authority to make tenure decisions, it could restrict its right to terminate the appointment of a teacher before the end of the probationary period. As a corollary thereto, a board of eduation could therefore agree to be bound by procedural steps preliminary to the termination of a probationary appointment (see *Matter of Candor Cent. School Dist. [Candor Teachers Assn.], supra).*

The issue here is whether the Board contractually restricted its right to terminate the employment of the probationary teacher prior to the end of the probationary period.

Appellant contends that the Board did so limit its powers. It points to paragraph D of article XXV (entitled Professional Behavior), which reads: "No teacher shall be disciplined, reprimanded, reduced in compensation or deprived of any professional advantage without just cause, nor shall any teacher be disciplined or reprimanded publicly. Any such discipline, reprimand or reduction in compensation or advantage, including adverse evaluation of teacher performance asserted by the Board or any agent or representative thereof, shall be subject to the professional grievance procedure hereinafter set forth."

However, that paragraph does not include "dismissal" as coming within the grievance procedure. The Federation nevertheless argues that the absence of that word is not determinative because a teacher cannot be "disciplined" or "deprived of any professional advantage" to a greater extent than by being dismissed, and the fact that the agreement placed no limitation on the type of discipline or deprivation of professional advantage shows that it was intended to include all types of discipline and deprivation, including its extreme, dismissal. The Federation asserts that, at the least, whether "disciplined" or "deprived of any professional advantage" includes "dismissed" is for the arbitrator to decide.

The Board argues that the exclusion of "dismissed" was intentional and that, in any event, "[i]f a controversy can fall within both the included and excluded categories, then it will not be arbitrable" *(Matter of Bd. of Educ. of Levittown Union Free School Dist. v Levittown United Teachers,* 60 AD2d 629, 630). The Board also notes that under section 7(d) of article XXVII, the "arbitrator shall limit his decision strictly to the interpretation or application of the express provision of this agreement submitted to him", thus showing that it was not intended that subject matters for arbitration could be enlarged by implication.

■ We agree with the Board that the purpose of article XXV was to cover grievances of teachers whose services were being continued and that the omission of the word "dismissed" was deliberate (cf. *Matter of Cohoes City School Dist. v Cohoes Teachers Assn.,* 40 NY2d 774, *supra; Matter of Candor Cent. School Dist. [Candor Teachers Assn.],* 42 NY2d 266, *supra,*

where the agreements included the word "dismissal" as subject matters of the grievance and arbitration procedures).

In *Board of Educ. v Lakeland Fed. of Teachers Local 1760, Amer. Fed. of Teachers, AFL-CIO* (42 NY2d 853, 854), which involved the same agreement we are here considering (albeit in a different type of dispute), the Court of Appeals determined that the arbitration provision involved a "limited or restricted arbitration clause despite its length". Similarly, we hold that the words "disciplined, reprimanded, reduced in compensation or deprived of any professional advantage" as they are used in paragraph D of article XXV of the agreement, are limited to punishment short of dismissal. We do so based upon what we believe is a common sense reading of that paragraph and by applying the maxim *noscitur a sociis* ("it is known from its associates") (see McKinney's Cons Laws of NY, Book 1, Statutes, § 239; 10 NY Jur, Contracts, § 195; *Popkin v Security Mut. Ins. Co. of N. Y.,* 48 AD2d 46).

■ The terms following "disciplined" indicate the lesser aspects of discipline. Since the latter were enumerated would not dismissal, which is the most severe form of punishment, have been included, if such had been the intent? As stated in New York Jurisprudence (10 NY Jur, Contracts, § 217, p 127) "[g]eneral words, in the construction of an instrument, are deemed to be limited by particular restrictions, and it is not material whether the particular recital precedes or follows such general words."

■ It is true that the maxim *noscitur a sociis* (which is similar to *ejusdem generis)* is merely a guide to determining contractual or legislative intent. However, we find no logical support for believing that the board intended to surrender to an arbitrator its exclusive authority to discharge a probationary employee who it believed was so incompetent that his services, if continued, would not improve and that it would be required to await the close of the three-year probationary term to dismiss him at which time it could do so without assigning any reason. So encompassing a surrender, even though not violative of public policy, must be shown by more than the use of the word "disciplined", accompanied, as it was in this case, with less severe penalties.

Appellant claims that section 7(d) of article XXVII strengthens, not negates, its position. It interprets the provision that "[t]he arbitrator shall limit his decision strictly to the interpretation or application of the express provision of this agree-

ment" to mean that the arbitrator, in addition to having the right to determine whether the imposed discipline was appropriate or too severe, had the right to interpret the meaning of the term "disciplined". However, this is a "boot strap" contention, because the Federation must first show that a dismissal is one of the disciplines intended to be the subject of a grievance to which arbitration would be the final resort.

◼ In *Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. (United Liverpool Faculty Assn.)* (42 NY2d 509, 510-514, *supra*) the court stated that "whether the question sought to be submitted to arbitration is within or without the ambit of [a particular arbitration] * * * clause, is to be determined by the courts. In making such determinations the courts are to be guided by the principle that the agreement to arbitrate must be express, direct and unequivocal as to the issues or disputes to be submitted to arbitration; anything less will lead to a denial of arbitration * * * [I]t cannot be inferred as a practical matter that the parties to collective bargaining agreements in the public sector always intend to adopt the broadest permissible arbitration clauses * * * [I]t must be taken, in the absence of clear, unequivocal agreement to the contrary, that the board of education did *not* intend to refer differences which might arise to the arbitration forum. Such reference is not to be based on implication" (emphasis in original).

In that case a female teacher was placed on a leave of absence because of her refusal to submit to a medical examination by a male physician. Arbitration was demanded on the ground that the grievance involved "Teachers' health or safety" (p 514) within the meaning of that clause in the collective bargaining agreement. The court concluded that although from one point of view the controversy was one related to "Teachers' health or safety", from another view it could be classified as one involving a "disciplinary proceeding" (p 515) (which the agreement excluded from arbitration). The court then stated (p 515): "A very reasonable assertion can be made that this particular controversy falls within both the included and excluded categories. In this circumstance, we cannot conclude that the present dispute falls clearly and unequivocally within the class of claims agreed to be referred to arbitration. Accordingly, the application of the school district for a stay of arbitration was properly granted".

In *Binghamton Civ. Serv. Forum v City of Binghamton* (44

NY2d 23, 29), the court iterated the *Liverpool* analysis and further stated: "In the public sector, this public policy limitation [restricting the power of an arbitrator] has arisen with respect to school matters and is derived from the statutory scheme implicit in the Education Law (see, e.g., *Matter of Candor Cent. School Dist. [Candor Teachers Assn.]*, 42 NY2d 266). The discipline imposed upon a miscreant public employee, however, is not so limited *so long as there has been a clear expression of intention to arbitrate the matter.*" (Emphasis supplied.)

■ ■ The essence of these holdings is that in the public sector an agreement to arbitrate a particular grievance will not be inferred but is dependent upon express, direct and unequivocal language providing therefor. Such language dealing with dismissal is absent in the collective bargaining agreement in this case.

Appellant argues, in effect, that *Liverpool* has been attenuated by *Matter of Port Washington Union Free School Dist. v Port Washington Teachers Assn.* (45 NY2d 411), so that here the interpretation of the word "disciplined" is properly for the arbitrator and is not a threshold issue to be decided by the court.

*Port Washington* involved a grievance based on the unilateral action of a school superintendent who had reduced certain extracurricular activities and assignments, purportedly for economic reasons. The collective bargaining agreement set up a number of joint committees, comprised of administrative and teachers association representatives, to make recommendations with respect to various subjects including "extra assignments and curriculum development" (p 416). The agreement provided (p 416) nevertheless, that " 'a recommendation of any joint committee * * * shall be advisory * * * and may be accepted or rejected, in whole or in part, by the Superintendent' ". The agreement further provided for a resolution of grievances, including " 'a complaint by an instructional employee that * * * there has been as to him a violation, misinterpretation or inequitable application of any of the provisions of this Agreement.' " The final step in the grievance procedure was submission to arbitration, but the arbitrator was to " 'have the power only to interpret what the parties to the agreement intended by the specific clause in the Agreement which is at issue' ".

The demand for relief, as submitted to the arbitrator in

*Port Washington,* requested more than the submission to the joint committee of the issue of reduction of extracurricular activities and assignments. In essence, it sought annulment of the contested unilateral action, restoration of the eliminated activities, and back pay for teachers affected by the cutbacks. The school district's contention, in its request that arbitration be stayed, was that the relief demanded would violate public policy.

The Court of Appeals held (pp 417-418) that arbitration could be stayed "where the arbitrators could not grant any relief without violating public policy", but that "labor arbitrators, even in the public sector, are 'not strictly limited to remedies requested by the parties' ". The court then stated (pp 418-419) that "even though the full scope of relief in precisely the form demanded by the teachers association might, if granted *in toto* by the arbitrator, ultimately lead to an award which would be subject to vacatur this consideration does not, standing alone, justify judicial interference with the arbitration process at this stage * * * It follows that where the relief sought is broader than any enforceable remedy that may prospectively be granted but may also be adequately narrowed to encompass only procedural guarantees * * * a stay of arbitration on policy grounds is premature and unjustified * * * [S]hould the arbitrator's exercise of remedial discretion end in perceived policy conflicts, review by the courts will not have to rest on speculation or assumption".

■ That is very different from this case. Here there is a vital threshold question as to whether the board agreed to surrender to an arbitrator the right to review the dismissal of a probationary teacher prior to the termination of the probationary period, when it had the unquestioned right to dismiss him or her at the close of the probationary period. We are here dealing with a surrender of a traditional right even though such surrender if contractually agreed upon would not be contrary to public policy. The surrender, if there is one, "must be express, direct and unequivocal" (see *Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. [United Liverpool Faculty Assn.],* 42 NY2d 509, 511, 515, *supra),* and one that "falls clearly and unequivocally within the class of claims agreed to be referred to arbitration".

We take note of *Matter of Port Jefferson Sta. Teachers Assn. v Brookhaven-Consewogue Union Free School Dist.* (45 NY2d 898, 899), not referred to by either party. There the

collective bargaining agreement provided that "[t]here shall be no reduction in the number of specialist teachers employed by the School District during this contract, provided there is no decrease in enrollment." The enrollment did not decrease and the number of specialist teachers was not reduced. Instead, the district reduced the volume of specialty instruction by assigning four specialist teachers to subjects outside their specialty. The teachers association invoked the grievance procedure and ultimately proceeded to arbitration, claiming that, in effect, there was a "reduction in the number of specialist teachers". The arbitrator determined that the reassignment of specialists constituted a violation of the agreement. On the motion to confirm the award, the school district argued that the provision of the agreement as to no reduction of the number of specialist teachers violated public policy.

The Court of Appeals (p 900) held that staff size was not within the school administration's exclusive prerogative, that therefore it was arbitrable (citing *Matter of Susquehanna Val. Cent. School Dist. [Susquehanna Val. Teachers' Assn.]*, 37 NY2d 614, 616-617), and that "[n]o strong public policy however derived, is violated by such a provision in a short-term collective bargaining agreement".

In the course of the opinion the court stated (p 900) that "there are some duties or responsibilities so important that a school district will not be permitted to delegate them or to bargain them away", but that the matter of staff size was not one of them. The court's reference to school district responsibilities that may not be bargained away would conversely indicate that where a school district *can* and does delegate to an arbitrator a particular school responsibility, here, the dismissal of a teacher during his probationary term (see *Matter of Cohoes City School Dist. v Cohoes Teachers Assn.*, 40 NY2d 774, *supra; Matter of Candor Cent. School Dist. [Candor Teachers Assn.]*, 42 NY2d 266), such responsibility is properly one for ultimate arbitration. Such an argument would disregard the issue before us which is not whether a school district can agree to submit the issue to arbitration but whether submission of the particular issue to arbitration was here agreed upon.

■■ In the public sector, where matters of substance are involved, "the agreement to arbitrate must be express, direct and unequivocal as to the issues of disputes to be submitted to arbitration" and "[s]uch reference is not to be based on

implication". Since the grievance procedure here did not expressly, directly and unequivocally provide for the submission to arbitration of the dismissal of a probationary teacher, the judgment appealed from which stayed arbitration, should be affirmed even if a "reasonable assertion can be made that this particular controversy falls within both the included and excluded categories" (see *Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. [United Liverpool Faculty Assn.]*, 42 NY2d 509, pp 511, 514, 515, *supra*).

O'CONNOR, J. P., COHALAN and MARGETT, JJ., concur.

Judgment of the Supreme Court, Westchester County, entered March 31, 1978, affirmed, with $50 costs and disbursements.