In the Matter of the Arbitration between the BOARD OF EDUCATION OF THE CLARKSTOWN CENTRAL SCHOOL DISTRICT, Respondent, and NICHOLAS JONES, as Representative for the Clarkstown Teachers Association, Appellant.

Second Department, May 7, 1979

## APPEARANCES OF COUNSEL

*James R. Sandner (James J. Brady* of counsel), for appellant.

*Lexow & Jenkins, P. C. (Warren E. Berbit* of counsel), for respondent.

OPINION OF THE COURT

O'Connor, J.

In this proceeding to stay arbitration demanded under the parties' collective bargaining agreement, Nicholas Jones, as representative of the Clarkstown Teachers Association, appeals from a judgment of the Supreme Court, Rockland County, which granted the application. For the reasons which follow, the judgment should be reversed, the application denied, and the parties directed to proceed to arbitration.

The grievant, Mrs. Sydel Winer, a Spanish teacher at the Clarkstown Senior High School (North), received a rating of "improvement needed" in the areas of "tact" and "cooperation" on a "Teacher Summary Evaluation Report" dated May 27, 1976 and prepared by Dr. Albert Scalera, co-ordinator of foreign languages for the Clarkstown Central School District. After Mrs. Winer took issue with these ratings, Dr. Scalera prepared a written addendum to the summary evaluation, detailing three instances in which Mrs. Winer had allegedly displayed a lack of tact and a failure to co-operate and setting forth suggestions for improved performance in those areas. Mrs. Winer disputed the factual allegations of the addendum.

In November, 1976 Dr. Scalera personally observed Mrs. Winer's classroom performance and filed a generally favorable "Teacher Observation Report", which included a number of suggestions for the improvement of lesson content. Pursuant to the collective bargaining agreement (the agreement) Mrs. Winer submitted a written statement in which she took issue with Dr. Scalera's comments in the observation report. Mrs. Winer then filed a grievance with Dr. Felix Festa, Superintendent of Schools. Mrs. Winer again submitted a written statement pursuant to the agreement, in which she alleged, among other things, that the summary evaluation report of May 27, 1976 and the addendum thereto violated article X of the agreement in that they were based upon conferences with other teachers rather than upon personal observations. Article X of the agreement provides, in part:

"TEACHER EVALUATIONS.

"a. Personal Observations—All monitoring or observation of the work performance of a teacher will be conducted openly and personally in the place of instruction with full knowledge of the teacher. A schedule of the number of classroom observa-

tions and the observer shall be announced in each building by October 1. Such schedules shall be consistent within levels. Teachers will be given a copy of any evaluation report prepared by their superiors and will have the right to discuss such report with their superiors before it is submitted to central administration or put in their personal files. Observation reports shall be given to teachers within 3 days of the classroom observation. Comments which relate to a teacher's weakness shall be accompanied by suggestions for improvement of performances. The district shall consult with the Association in developing an evaluation form. Adequate space on the form will be afforded for the teacher to comment. The teacher also will be afforded the opportunity to submit a statement regarding the report to be filed. The teacher shall acknowledge that he has read the report by affixing his signature on the actual copy to be filed with the understanding that such signature merely signifies that he has read the material to be filed. Such signature does not necessarily indicate agreement with its contents."

A hearing was held before the superintendent on December 7, 1976. On December 17, 1976 the superintendent denied the grievance. On January 27, 1977 the grievance was further denied by the Board of Education of the Clarkstown Central School District. On November 30, 1977 the Clarkstown Teachers Association served a demand for arbitration. Thereafter, the Board of Education (the board) commenced the instant proceeding to stay arbitration. Special Term granted the application. In my opinion, the judgment should be reversed and the parties should proceed to arbitration.

I agree with Special Term that arbitration of the instant dispute would not violate "public policy" by invading the board's statutory power to evaluate teachers (see, e.g., Education Law, § 1604, subd 8; cf. Education Law, § 1709, subds 16, 33). The nub of the grievant's disagreement with the board is her contention that article X of the agreement provides the sole and exclusive procedure for the evaluation of teacher performance. Without intimating any opinion on the merits of this claim, I find that such a procedure, if agreed to by the board, merely limits the board's discretion as to the method of evaluation but does not encroach upon its ultimate power to assess the performance of its teachers (see *Board of Educ. v Bellmore-Merrick United Secondary Teachers,* 39 NY2d 167, 172; *Matter of Cohoes City School Dist. v Cohoes Teachers*

*Assn.,* 40 NY2d 774, 778). Thus (and solely by way of example), an arbitrator's award which directed the board to remove the summary evaluation from the grievant's personnel file and to base future evaluations exclusively upon personal observations as defined in article X would have the effect of holding the board to its agreement (if any) and would not impinge upon the board's ultimate power to pass judgment on the competency of its teachers. The board's argument that such an award would violate public policy by encroaching upon its discretion to choose the method of evaluation does not alter my conclusion. Such an argument assumes that the board has retained that discretion under the agreement and, in effect, prematurely decides the controversy, which turns on the extent to which the board in fact did retain such discretion.

I conclude that the instant arbitration claim is authorized by the terms of the Taylor Law and does not violate public policy (see *Matter of Acting Superintendent of Schools of Liverpool Cent. School Dist. [United Liverpool Faculty Assn.],* 42 NY2d 509, 513). The question remains whether the parties in fact agreed to submit the instant grievance to arbitration. Under the agreement, a "grievance" which has properly reached stage 4 of the grievance procedure may be submitted to arbitration. Article XXII (subd c) of the agreement defines grievance as: "any claimed violation, misinterpretation or inequitable application of any existing laws, rules, regulations or policies which relate to or involve the employee in the exercise of the duties assigned [to] him. [A grievance] is also a claim based upon an event or condition which effects *[sic]* the welfare and/or conditions of employment of a teacher or group of teachers and/or the interpretation, meaning or application of any of the provisions of this Agreement or any subsequent Agreement entered into pursuant to this Agreement."

Special Term noted, accurately, that article X of the agreement ("Teacher Evaluations") is silent on the matter of summary evaluations of the type employed in the grievant's case. I disagree, however, with Special Term's conclusion that a finding of arbitrability in the present dispute can only be "based upon implication" (cf. *Matter of Acting Superintendent of Schools of Liverpool Cent. School Dist. [United Liverpool Faculty Assn.],* 42 NY2d 509, 514, *supra).* The grievant contends that the agreement forecloses the board from using the

summary evaluation because its conclusions were not based upon "personal observations"; the board counters that article X of the agreement merely provides a procedure for evaluation based upon personal observations, but does not preclude other methods of evaluation. Whatever the merits of either of these contentions (as to which I express no opinion), it is clear that the crux of the controversy is "a claim based upon * * * the interpretation, meaning or application of [a provision] of" the agreement which may be submitted to binding arbitration under the agreed procedure in article XXII. I find, therefore, that the parties agreed clearly and unequivocally to refer their differences in the present dispute to arbitration (cf. *Matter of Acting Superintendent of Schools of Liverpool Cent. School Dist. [United Liverpool Faculty Assn.], supra, p 514).*

This conclusion harmonizes with our recent decision in *Matter of Wyandanch Union Free School Dist. v Wyandanch Teachers Assn.* (66 AD2d 895), albeit with an opposite result. In that case, the teachers association argued that certain provisions of the collective bargaining agreement, relating to the number of teaching periods and hours to be devoted to parent conferences and curriculum development, prohibited a new requirement by the board of education that teachers prepare "unit plans", a task which increased the amount of time necessary for class preparation. This court held that the teachers' grievance fell outside the scope of the arbitration clause, which encompassed disputes concerning the interpretation of the agreement in terms akin to those found in the instant agreement to arbitrate.

*Wyandanch (supra)* is superficially similar to the instant case in that the agreement therein was silent with respect to "unit plans", as the instant agreement is silent with respect to summary evaluations. The material consideration, however, is not whether the agreement is silent with respect to the subject matter of the dispute; central, rather, is whether the dispute is one which generally "concerns" or is "based upon" the provisions of the agreement for the sole purpose of construing the arbitration clause. In *Wyandanch,* the teachers' claim that the unit plans constituted a "productivity increase" prohibited by the agreement was devoid of any linkage with the contract terms and would have resulted in a "bootstrap" arbitration. In the instant case, the grievant's claim is unambiguously connected to the subject matter of article X of the agreement, namely, appropriate or exclusive methods of

"teacher evaluation" (cf. *Matter of Acting Superintendent of Schools of Liverpool Cent. School Dist. [United Liverpool Faculty Assn.]*, 42 NY2d 509, 513-514, *supra).* In so noting, I again intimate no assessment of the merits of the grievant's claim under the agreement, in accordance with the prohibition of CPLR 7501.

Suozzi, J. P., Rabin and Shapiro, JJ., concur.

Judgment of the Supreme Court, Rockland County, dated July 17, 1978, reversed, on the law, without costs or disbursements, application denied and the parties are directed to proceed to arbitration.