BOARD OF EDUCATION, LAKELAND CENTRAL SCHOOL DISTRICT, DISTRICT OF SHRUB OAK, Respondent, v JOSEPH BARNI, as President of Lakeland Federation of Teachers, Local 1760, American Federation of Teachers, AFL-CIO, Appellant.

Second Department, August 20, 1979

#### APPEARANCES OF COUNSEL

*James R. Sandner (Jeffrey S. Karp* of counsel), for appellant.

*Murray Steyer* for respondent.

#### OPINION OF THE COURT

SHAPIRO, J.

The petitioner Board of Education (Board) moved to restrain the arbitration sought by appellant on behalf of Mary Wilcox. Special Term granted the petition and we affirm.

THE FACTS

Mary Wilcox is a probationary teacher who applied to the Board to be appointed to the position of probationary guidance counselor, which had become vacant in one of the Board's schools. She then had nine years of service in the school district. However, her appointment was not recommended by the superintendent of schools who chose another. The union filed a grievance in her behalf. (She has retained her position as *teacher.)*

The grievance is based upon provisions in the collective bargaining agreement. Paragraphs A, B and C of article XVII (entitled "Vacancies, Promotions and Transfers") read:

"A. The Board recognizes that it is desirable in making assignments to consider the interests and aspirations of its teachers. Requests by a teacher for transfer to a different class, building or position shall be made in writing to the Superintendent * * * Each applicant shall receive an interview. Such requests may be renewed once each year to assure active consideration by the Superintendent * * *.

"B. The Board declares its support of a policy of filling vacancies, including vacancies in supervisory positions, from qualified personnel as reasonably determined by the Board within its own teaching staff. Whenever a vacancy arises or is anticipated, the Superintendent will promptly notify the Federation which will encourage interested teachers to apply to the Director of Personnel. Each applicant on the staff shall receive an interview. *Vacancies shall be filled on the basis of the experience, competency and qualifications of the applicant, length of service in the district, and other relevant factors.* * * *

"C. When, in the judgment of the Superintendent of Schools, or his administrative designee, two applicants of equal ability are being considered for vacancies, promotions or transfers, then seniority shall be controlling." (Emphasis supplied.)

Article XXVII (entitled "Grievance Procedure") includes, in section 1, the definition of a grievance as "a complaint by any teacher * * * concerning an alleged misinterpretation or misapplication of an express provision of this Agreement."

Section 7 of said article is entitled "Step 4: Arbitration". Subdivision (d) of section 7 states:

"The arbitrator shall limit his decision strictly to the inter-

pretation or application of the express provision of this agreement submitted to him and *he shall be without power or authority to make any decision:*

"(1) contrary to, or inconsistent with, or modifying or varying in any way, the terms of this agreement, or of applicable law, or rules or regulations having the force and effect of law;

"(2) involving Board discretion or Board policy under the provisions of this agreement, under Board rules or regulations, under regulations having the force and effect of law, or under applicable law;

"(3) limiting or interfering in any way with the powers, duties and responsibilities of the Board or the Superintendent of Schools under the Board's rules or regulations, applicable law, and rules and regulations having the force and effect of law." (Emphasis supplied.)

The relevant parts of the applicable statutes are aptly quoted and discussed in Special Term's opinion:

"Education Law, section 3012(1)(a) provides, in pertinent part, that:

" *'Teachers * * * shall be appointed* by the board of education of a union free school district * * * *and employing a superintendent of schools, upon the recommendation of such superintendent of schools,* for a probationary period of three years * * *.'

"Pursuant to Education Law, Section 1804, a central school district has the same statutory duties and obligations as a union free school district.

"Education Law, section 1709(33) provides, again in pertinent part, that:

" 'The said board of education * * * shall have the power, and shall be its duty:

" '(33) To have in all respects the superintendence, management and control of the educational affairs of the district.'

"Section 1711 of the Education Law affords the superintendent of schools the power:

" 'To have supervision and direction of * * * teachers.' "

The grievance was instituted by the Lakeland Federation of Teachers on behalf of Ms. Wilcox on April 7, 1978. It stated that Ms. Wilcox "believes that serious violations of the Agreement of a procedural and substantive nature have arisen with the * * * appointment of guidance counselor * * *. These

violations resulted in Ms. Wilcox not receiving the appointment. Procedural and substantive requirements of Article II, section J; Article XVII, sections B and C; and all other relevant provisions of the Agreement, have not been met."

Section J of article II, to which the grievance refers, provides that the provisions and terms of the agreement "shall be applied in a manner which is not arbitrary, capricious or discriminatory and without regard to race, creed, religion, color, national origin, age, sex or marital status." Appellant's brief makes no claim of violation of that provision and we therefore deem it abandoned.

The only clause (as indicated by appellant's brief) which is claimed to have been violated by the school superintendent is the provision in paragraph B of article XVII that "[v]acancies shall be filled on the basis of the experience, competency and qualifications of the applicant, length of service in the district, and other relevant factors."

The grievance was denied at all stages of the procedure provided for in the collective bargaining agreement and the federation, on June 7, 1978, filed a demand for arbitration on behalf of Ms. Wilcox. The Board thereupon moved for a stay of arbitration.

### THE PETITION

The petition states that "there is no valid agreement between the parties hereto providing for arbitration of [Mary Wilcox's claim]" and that the "matters sought to be arbitrated in the demands * * * represent major public policy that have been vested by the Legislature of the State of New York in the exclusive jurisdiction of petitioner Board and its Superintendent of Schools and cannot be a subject of arbitration."

It further states that "the dispute * * * relates to imperative provisions of the Education Law as well as a clear expression of public policy which are interdicted from arbitration by the plain and clear language expressed in the statute. * * * Probationary appointments, substitute appointments and assignments of teachers are not terms and conditions of employment and are not subjects of collective bargaining required by Civil Service Law Sections 200 et. seq. (Taylor Law)."

The supporting affidavit of William J. McPhee, Superintendent of Schools, stated that he "did not recommend her for that

probationary appointment in the exercise of [his] rights and duties as Superintendent of Schools under the provisions of the Education Law * * * Sections 1711 and 3012. Under the provisions of Section 3012, Wilcox was ineligible for such appointment in the absence of my recommendation and the Board of Education did not grant her a probationary appointment as she requested."

### THE OPPOSING PAPERS

The answer to the petition, after quoting paragraph B of article XVII (that "[v]acancies shall be filled on the basis of the experience, competency and qualifications of the applicant, length of service in the district, and other relevant factors") and paragraph C (to the effect that "when the choice is between two applicants of equal ability, seniority shall be controlling"), stated that: (a) Ms. Wilcox had been an acting guidance counselor in the spring of 1975, replacing a teacher on sick leave; (b) when the present vacancy occurred in September, 1977 (due to the death of the incumbent), a screening committee of all guidance counselors met with each applicant; (c) upon information and belief, Ms. Wilcox "received the recommendation of nine out of the ten guidance counselor members of the informal committee", and that it would have been unanimous were it not for the fact that the sole dissenter was one "who had worked during the job action in the petitioner district" in September, 1977; (d) Ms. Wilcox is a certified guidance counselor; (e) despite the "careful review" of Ms. Wilcox's application (as stated in the Board's letter to her wherein she was informed that she had not been selected), "no inquiry was made by the petitioner or its agents as to the grievant's qualifications, abilities, or potentialities for fulfilling a guidance position"; (f) this is shown by letters to Ms. Wilcox from Manhattan College (where, apparently, Ms. Wilcox had taken guidance counseling courses) to the effect that it had not received requests for information regarding her qualifications as a guidance counselor; and (g) "[t]he appointment of an applicant other than grievant Wilcox to the position of guidance counselor violates paragraphs A, B, and C of Article XVII".

The supporting affirmation by the counsel for the federation states that "it is apparent by virtue of her prior service in the district, including service as acting guidance counselor, and the petitioner's inadequate review or inquiry into her qualifi-

cations and credentials, that *Ms. Wilcox was not evaluated in accordance with Article XVII, subsection B, and that further the vacancy was not filled on the basis of experience, competency, and qualifications of the applicant as required in paragraph B"* (emphasis supplied).

The affirmation in support of Ms. Wilcox continues that "by virtue of Article XVII * * * *the petitioner has agreed to a certain procedural mechanism* for determining how assignments are to be made and requests for transfer are to be evaluated. * * * Where * * * there is a question raised *as to the employer's compliance with the procedural provisions* of a collective bargaining agreement * * * the dispute is a proper matter to be presented to arbitration" (emphasis supplied).

The affirmation then states: "The underlying grievances herein do not demand that the arbitrator appoint [Ms. Wilcox] to [the position], but rather *alleges non-compliance with the procedural requirements of the contract* which are clearly proper questions for the arbitrator under the grievance procedure contained in article XXVII * * *. That Article empowers the arbitrator to deal with questions of interpretation or application of express provisions of the agreement" (emphasis supplied).

### THE LAW

It is clear that the federation is taking the position that the clause "[v]acancies shall be filled on the basis of the experience, competency and qualifications of the applicant, length of service in the district, and other relevant factors" is, in essence, a *matter of procedure.* But the federation does not spell out how value judgments relating to analysis of "experience", "competency" and "qualifications" of the applicant and "other relevant factors" constitute matters of *procedure.* As I see it, value judgments (which is what "filled on the basis of the experience, competency and qualifications", etc., is all about) have nothing to do with procedure.

The essence of appellant's argument is concisely stated in its reply brief: "This dispute is actually quite simple. In Article XVII * * * the respondent Board has *agreed* with the Federation that in making recommendations for appointments to the teaching staff the Superintendent of Schools will follow certain procedures and apply certain criteria in arriving at a candidate to recommend to the respondent [board] for appointment. The Federation * * * contends that in making his

recommendation to fill the guidance counselor position * * * the superintendent *did not comply* with those provisions".

It should be noted that this paragraph throws together, as though they are synonymous, the words "certain procedures" and "certain criteria in arriving at a candidate to recommend".

I would agree that if there were an open question as to whether there had been a failure to follow the *procedure* set forth in the agreement, we would then be dealing with a matter which the Board agreed was a proper subject for arbitration.

In a recent case decided by this court, the agreement stated, under a heading of "Teacher Evaluations", that "[a]ll monitoring or observation of the work performance of a teacher will be conducted openly and personally in the place of instruction with full knowledge of the teacher." It was held that a board evaluation was subject to arbitration where the evaluation may have been partly based on alleged instances of "lack of tact" which were not based on personal observation *(Matter of Board of Educ. [Jones],* 67 AD2d 537, 538). We there stated (p 539) that the "nub of the grievant's disagreement with the board is her contention that article X [entitled 'Teacher Evaluations'] provides the sole and exclusive procedure for the evaluation of teacher performance." The opinion by Mr. Justice O'CONNOR then states (pp 539-540): "I find that such a procedure, if agreed to by the board, merely limits the board's discretion as to the method of evaluation but does not encroach upon its ultimate power to assess the performance of its teachers (see *Board of Educ. v Bellmore-Merrick United Secondary Teachers,* 39 NY2d 167, 172; *Matter of Cohoes City School Dist. v Cohoes Teachers Assn.,* 40 NY2d 774, 778)."

In our case every conceivable aspect of qualification was stated to be what the board would consider. To make sure of this, it included the catch-all phrase "and other relevant factors". To conclude that the analysis and evaluation of every possible aspect of qualification is a matter of procedure leaves absolutely nothing remaining for substance.

If the federation's position were correct it would mean that the Board, by permitting this rhetorical expression of pieties in the agreement, surrendered all judgmental analysis of the qualifications of an applicant to an arbitrator.

If 10 persons had applied for the position of guidance

counselor, the Board (based on the superintendent's recommendation) could still choose only one. If the federation is right, the nine unsuccessful applicants could institute nine arbitration proceedings, wherein each would state that the "procedure" provided in the agreement had not been followed, because there had not been a proper evaluation of his "experience", "competency", "qualifications", "and other relevant factors". If anything is *not* procedure it is those nouns and noun clauses!

The judgment appealed from staying arbitration should therefore be affirmed.

MANGANO, J. (concurring in part and dissenting in part). Although I concur in the decision insofar as it affirms the granting of a stay of arbitration, in light of our recent decisions in *Board of Educ. v Miller Place Teachers Assn.* (70 AD2d 944) and *Board of Educ. v New York State United Teachers* (71 AD2d 846), I would nevertheless grant appellant permission to file a demand for arbitration based upon proper papers.

The demand as it appears in the record before us is insufficient. The mere listing of article and section number of a collective bargaining agreement accompanied by an assertion that "serious violations of the Agreement of a procedural and substantive nature have arisen", without more, does not suffice to indicate how or in what manner these provisions are alleged to have been violated.

I dissent from that part of the decision which determines that the matter sought to be arbitrated is not arbitrable. The state of the record before us does not lend itself to a determination of whether the dispute in this matter is of an arbitrable nature.

The provisions (art XVII, par B) of the collective bargaining agreement merely set forth certain procedures that the board has agreed to follow when a vacancy occurs in the school district, viz., the superintendent will promptly notify the federation of a vacancy, each applicant on the staff will receive an interview, and the vacancy will be filled on the basis of the experience, competency and qualifications of the applicant, length of service in the district, and other relevant factors.

The grievant has alleged that the Board failed to follow

these procedures.\* The majority holds that the "value judgments" encompassed in paragraph B of article XVII are anything but procedural. I disagree. The question of whether these agreed upon criteria were in fact employed in making the determination as to who is hired is purely a matter of procedure. It should be for the arbitrator to determine whether the superintendent in fact employed these criteria in making his determination (see *Matter of Cohoes City School Dist. v Cohoes Teachers Assn.,* 40 NY2d 774).

I agree with the majority insofar as they hold that the subjective determination of a given applicant's qualifications is vested in the discretion of the superintendent. But I am convinced that the determination of whether these criteria were utilized is not a matter for the courts to decide.

For us to hold otherwise would render these contractual provisions a nullity, thus relieving the school board of its obligation to follow certain procedures in the filling of vacancies to which it had agreed in the collective bargaining agreement. It does not appear that the bargained for right to certain procedural guarantees is precluded by the Education Law (cf. *Board of Educ. v Bellmore-Merrick United Secondary Teachers,* 39 NY2d 167).

MOLLEN, P. J., and O'CONNOR, J., concur with SHAPIRO, J.; MANGANO, J., concurs in part and dissents in part, with an opinion, in which RABIN, J., concurs.

Judgment of the Supreme Court, Westchester County, entered October 13, 1978, affirmed insofar as appealed from, with $50 costs and disbursements.

---

\* As previously stated, the demand for arbitration did not specify in what manner this provision of the agreement was violated.