■ BOARD OF EDUCATION OF THE THREE VILLAGE CENTRAL SCHOOLS OF THE TOWNS OF BROOKHAVEN AND SMITHTOWN, Respondent, v THREE VILLAGE TEACHERS ASSOCIATION, INC., Appellant.—In a proceeding to stay arbitration, the Three Village Teachers Association appeals from a judgment of the Supreme Court, Suffolk County, entered June 12, 1978, which granted the petition and thereby stayed arbitration. Judgment reversed, on the law, with $50 costs and disbursements, and application denied. Sherman Harmon was a certified social studies teacher at the Robert Cushman Murphy Junior High School. After a review of the academic qualifications of all social studies teachers, Harmon's school principal assigned him to teach five periods a week of mathematics. The teachers association then filed a grievance on Harmon's behalf, contending that procedures provided in article 22 of the collective bargaining agreement which dealt with involuntary reassignment had not been followed. The board's position was that under article 9 of the agreement the principal had the right to make the limited reassignment given Harmon without the necessity of following article 22 procedures. Article 9 required that teachers be assigned in accordance with the regulations of the State Department of Education and the State commissioner's regulations specifically allow such limited out-of-license reassignments (see 8 NYCRR 80.2 [c]). Section 3 of article 22 provided that teachers who have found a transfer to be unsatisfactory "shall have recourse through the grievance procedure". Article 2 (§ D, subd 4, par b) declared that an arbitrator was without power to make a recommendation involving board discretion under applicable law, except that he could decide that the application under the agreement was "so discriminatory,

arbitrary, or capricious as to constitute an abuse of discretion." Despite the board's contention that article 22 was not applicable here, the parties proceeded through the various levels of the grievance procedure. Prior to the superintendent's conference level, Step No. 3 of the procedure, the school principal voluntarily relieved Harmon of his homeroom assignment to compensate for the out-of-license assignment. Since Harmon considered this inadequate, the teachers association filed a demand for arbitration and the board commenced this proceeding to stay the arbitration. Special Term granted the petition on the ground that the contract language was at least equivocal as to arbitrability and therefore the dispute was not arbitrable since public sector arbitration requires an express agreement to arbitrate (see *Matter of Acting Supt. of Schools of Liverpool Cent. School Dist. [United Liverpool Faculty Assn.],* 42 NY2d 509). The court also held that the existence of a specific commissioner's regulation indicated that the assignment was a nondelegable duty on the part of the board. We disagree. Under *Liverpool* the question of arbitrability in the public sector is subject to a two-tiered analysis. A determination first must be made as to whether arbitration of the dispute is permissible under the Taylor Law. Here, public policy does not prohibit the board from agreeing to certain procedural prerequisites to the exercise of its authority under the commissioner's regulation relative to out-of-license requirements (cf. *Board of Educ. v Bellmore-Merrick United Secondary Teachers,* 39 NY2d 167). Thus, the provisions of article 22 do not constitute an impermissible surrender of the board's ultimate duty to make the assignments (cf. *Matter of Cohoes City School Dist. v Cohoes Teachers Assn.,* 40 NY2d 774). Nor does the fact that the relief requested by the teachers association might conflict with the public policy embodied in the commissioner's regulation and thus be subject to vacatur, mandate a stay of arbitration for public policy reasons. As the Court of Appeals has recently observed, there is no reason to preclude arbitration and assume the arbitrator's award will entail public policy conflicts *(Matter of Port Washington Union Free School Dist. v Port Washington Teachers Assn.,* 45 NY2d 411; see, also, *Matter of Board of Educ. [Jones],* 67 AD2d 537). The second tier of the *Liverpool* test requires an examination of the language used by the parties in their arbitration agreement. In the instant agreement, "grievance" is defined to be "a claim based upon an event or condition which adversely affects the welfare or working conditions of a teacher or group of teachers allegedly caused by misinterpretation or inequitable application of the terms of this agreement," with certain exceptions not here relevant. This language falls within the class of "broad" arbitration clauses (see *Board of Educ. v New Paltz United Teachers,* 44 NY2d 890; *Matter of South Colonie Cent. School Dist. v Longo,* 43 NY2d 136) and embraces the current controversy. In addition, under article 2 (§ D, subd 4) the arbitrator could determine whether the board's application of the law under the agreement constituted an abuse of the discretion reserved to it. Reversal therefore is mandated. O'Connor, J. P., Lazer, Rabin and Gulotta, JJ., concur.