■ BOARD OF EDUCATION OF THE THREE VILLAGE CENTRAL SCHOOLS OF THE TOWNS OF BROOKHAVEN AND SMITHTOWN, Respondent, v THREE VILLAGE TEACHERS' ASSOCIATION, INC., Appellant. (And Another Action.)—In two

proceedings to stay arbitration, the Three Village Teachers Association appeals from two judgments of the Supreme Court, Suffolk County, both dated December 12, 1978, which granted the stays. Judgments reversed, on the law, without costs or disbursements, applications denied and the parties are directed to proceed to arbitration forthwith. No fact issues were presented for review. During the 1977-1978 school year, the petitioner board of education implemented the "Croft Reading Management System" on a district-wide basis. The Croft system, which was selected by the board in order to improve reading levels of students in the school district, requires a variety of materials including a set of objectives, a record card for each student, a testing program and a "Skillpack Activity Kit" of supplementary materials. It is uncontroverted that some of the teachers affected by the new system were not consulted prior to its adoption. In a directive dated October 24, 1977, the assistant superintendent instituted, a form of "Croft management" in his evaluation of teachers as well. Each teacher, using the Croft format, was required to formulate (a) a statement of goals and objectives, (b) a plan of action and, (c) criteria for evaluation. In addition, each teacher would be required to make a self-evaluation of progress made toward achieving the named goals in a midyear evaluation. At the end of the year, building administrators would evaluate the teacher's achievement of the goals on the formal evaluation report. These changes, and others instituted by the school district at the same time, resulted in a series of grievances being filed by the appellant, Three Village Teachers Association. Demands for arbitration, two of which are relevant to the instant appeals, were subsequently filed in connection with these grievances. In a demand for arbitration dated June 7, 1978 (Grievance No. 1), the appellant complained that the "inclusion of goals on formal evaluation reports" was violative of various contractual provisions, including subdivision A of article 16, which in part, provides: "2. The basic purpose of supervision and evaluation shall be the improvement of instruction. The evaluation will measure primarily professional competence. Other areas such as personal characteristics and relations with others will be considered." In a demand for arbitration dated June 9, 1978 (Grievance No. 2), appellant alleged that the Croft Reading Management System was adopted in a manner contrary to article 20 of the contract, which states that "The selection of instructional materials to aid in the teaching of the curriculum areas shall be a joint venture of the teachers who will use the materials and the administrators or department chairman". Petitioner applied for, and was granted, stays of both arbitrations. In our opinion, Special Term should not have granted the relief requested in either case. Under the standards set forth in *Matter of Acting Superintendent of Schools of Liverpool Cent. School Dist. (United Liverpool Faculty Assn.)* (42 NY2d 509), both disputes are arbitrable. First, we believe that public policy does not bar arbitration of the instant disputes. Where, as here, the parties have agreed to arbitrate a dispute, arbitration should be stayed only if the arbitrator could not grant any relief without violating public policy (see *Matter of Port Washington Union Free School Dist. v Port Washington Teachers Assn.,* 45 NY2d 411, 417). This is not the case in the proceedings at bar. As to Grievance No. 1, an arbitration award would be permissible so long as it dealt only with the method of teacher evaluation, and did not encroach upon the petitioner's ultimate power to assess teacher performance (see *Matter of Board of Educ. [Jones],* 67 AD2d 537). Similarly, as to Grievance No. 2, the arbitrator could fashion an arbitral award, procedural in nature, which does not interfere with the school district's substantive, nondelegable duty to select curricula and educational materials

for its students (see *Matter of Port Washington Union Free School Dist. v Port Washington Teachers Assn., supra;* Education Law, § 1709, subds 3, 4). Second, it appears that there was a clear and unequivocal agreement to arbitrate both controversies. The arbitration clause is broad in scope, providing for arbitration of any grievance, defined as: "a claim based upon an event or condition which adversely affects the welfare or working conditions of a teacher or group of teachers allegedly caused by misinterpretation or inequitable application of the terms of this agreement, provided, however, that such terms shall not include the question of whether a teacher was improperly denied tenure, except as set forth in paragraph B-(2) of this Article, the formulation of salary schedules, the scale of retirement benefits, or any other matter as to which a method or review is prescribed by law or by any rule or regulation of the State Commissioner of Education having the force and effect of law, or as to any matter as to which the Board of Education is without authority to act." Without considering the merits of the claims, it is apparent that each is "based upon" a claimed violation of a specific contractual provision, article 16 (subd A, par 2) in the case of Grievance No. 1, and article 20 in the case of Grievance No. 2 (see *Matter of Board of Educ. [Jones], supra).* Damiani, J. P., O'Connor, Lazer and Margett, JJ., concur.