Allen Murray Myers, J.
This case illustrates how New Yorkers are being victimized by unscrupulous truckers of household goods. The racket is such that the average consumer can do very little to protect himself. The scenario is something like this. A person in need of a trucker to move his household goods from one abode to another, shops around for the best price. He finds that no trucker will commit himself. Instead he will be told that in the trucker’s estimate the job should take approximately X amount of man hours at so much per man hour plus the cost of packing cartons and the like. Based on this type of an estimate he will choose the lowest bidder. But when the moving job is completed the bill presented bears no resemblance to the estimate. It may be as much as 400% or more greater. This is accomplished by the trucker giving a low estimate to get the job and then inflating the man hours by such gold bricking devices as deliberately getting lost for many hours while transporting the goods from one location to another. Not only is the consumer vicitimized but so is the legitimate trucker who has to compete with the racketeers.
Here is what occurred in the case tried before me without a jury.
Plaintiff sued for breach of a contract for the moving of household goods and for an account stated, to which the defendant interposed a defense of fraud.
I found the testimony of plaintiff’s principal witness, its truckman, Joseph Pajor (Joe), incredible. Either he had no sense of time, space or distance or he was lying. His attempts to justify his actions on behalf of plaintiff merely serve to buttress my view that the plaintiff and its assignor had deliberately embarked on a scheme to defraud the defendant. I do *142 not believe plaintiff’s claim that defendant had more belongings in his apartment on the day of the move than when the estimate was given, and I do not believe any of the excuses offered to justify 15 hours of moving time with three men and two vehicles.
I believe the facts to be as testified to by Mark Flappin, the defendant. In response to an advertisement in New York Magazine, he hired .Crockett’s Movers and Storage to move his < household goods from a three-room apartment at 305 East 86th Street (at 2nd Ave.) to 1701 York Avenue (at 89th St.) on March 22, 1973. Defendant was given an estimate on the phone and sometime within the week before the move a representative of Crockett came to defendant’s home, delivered some boxes, took a brief look at the contents of the apartment and gave the defendant a written estimate. According to the estimate, the move would take four to five hours with one van and two men at $18 an hour (costing approximately $100 with cartons). The estimate was in conformity with the estimate defendant had received on the phone when he first spoke to Crockett.
Although plaintiff promised to begin at 8:00 a.m., no truckman appeared until 9:30. And it was not Crockett that showed up but Joe on behalf of the plaintiff, East Coast Moving and Storage. Defendant was not aware until later in the day that Crockett was not moving him and that he was dealing with an unlicensed mover. Had he known Crockett was unlicensed he would not have hired him.
Joe, the truckman then disappeared until 11:00 a.m. when defendant fortuitously met him at a nearby coffee shop with a helper named Bob. They told defendant they needed and were waiting for an extra man but that there would be no extra charge for him. Therefore defendant did not object to the extra man. The movers then began to work at about 11:00 a.m. At about 1:30 p.m. a third man with a small truck appeared. It took these three men approximately five hours, until 4:00 p.m., to move the prepacked contents of the three room apartment into a truck. They then took five hours to travel from 86th Street and Second Avenue to 89th Street and York Avenue. To add insult to injury, they left two large cartons behind.
When the movers arrived at York Avenue at 9:30 p.m., it took them an additional five hours to unload defendant’s goods. Defendant claims that he never saw more than one man working at a time during those five hours. Upon completion of the job at 2:00 a.m., Joe asked the defendant for $385 for 15 hours’ work which defendant refused to pay. Plaintiff is suing to recover this sum.
*143 Defendant interposed a counterclaim for lost and damaged property in the amount of $200. I shall dispose of this claim first because its resolution does not involve any complex issues.
In the course of unpacking, during the week following the move, defendant found that one carton with its contents and two bridge chairs were missing, and that there were rips in the fabric on the arm of a brown reclining chair and on the bottom of a gold chair and a break in the leg of a brown reclining chair. I find the value of the lost bridge chairs to be $50 and the contents of the lost box as follows: Four “ LeCreuret ” pots, $75; one dozen large glasses, $12; one-half dozen small glasses, $6; one hammered aluminum tray, $12; cover of casserole set, $25 ; and three copper-bottomed pots, $40. Total: $220. There was no testimony as to the cost of repairs to the damaged furniture. Defendant made a claim for his lost and damaged property but was never reimbursed. I find that the items were lost and damaged as a result of plaintiff’s negligence. Defendant is therefore entitled to judgment on his counterclaim for $200, which is less than the amount of damages proven.
The next question is whether plaintiff can recover on its contract or in quemtum meruit.
Plaintiff was served with a notice to admit dated August 1, 1973, stating that plaintiff was not licensed as required by the Transportation Law of the State of New York on March 22, 1973. Since plaintiff failed to respond, I find that plaintiff was an unlicensed mover.
I also find that 15 hours was an unconscionably long time for this move and that it should have been and could have been performed within the estimated time of four to five hours at the contract price of $18 per hour.
On the action on an account stated, I find that there was no evidence to sustain such a finding, particularly since defendant had protested the amount demanded.
Whether plaintiff can recover on breach of contract or quasi contract presents more complex issues. In the first place, the contract for the trucking was made with Crockett and not with East ICoast Moving and (Storage, Inc. However, plaintiff’s owner and president, Freddy K. .Seidel, testified that he often did jobs for Crockett and Crockett often did jobs for him, and that Crockett called him, gave him the contract, and asked him to do the job. I therefore assume that Crockett had assigned the contract to plaintiff and plaintiff Avas a proper party plaintiff in-this action.
*144 It would appear that plaintiff should be entitled to recover at least the fair and reasonable value of his services unless his contract and actions were so tainted by fraud and illegality that it would be against public policy to permit him to recover.
Transportation of property for compensation is governed by article 7 (§ 160 et seq.) of the Transportation Law. Section 160 (subd. 3, par. [c]) of the said law provides that it is applicable to: ‘ ‘ the transportation of household goods between points within cities of a population of one million persons or more ’ \
Only New York City is a member of this class. Such an application of law based on population does not violate section 17 of article III of the New York State Constitution (see, also, Farrington v. Pinckney, 1 N Y 2d 74; Adler v. Deegan, 251 N. Y. 467). Moreover, it is clear from this statute and its predecessor (Public Service Law, art. 3-B; L. 1955, ch. 834, § 2) that the State has pre-empted the regulation of transportation of household goods within the City of New York (Kindermann Fireproof Stor. Warehouses v. City of New York, 39 A D 2d 266). Subdivision 1 of section 162 of the Transportation.Law prohibits a common carrier of property by motor vehicle from operating without ‘1 a certificate of public convenience and necessity issued by the commissioner,” and subdivision 1 of section 165 prohibits a contract carrier from operating without a permit issued by the commissioner. I find that plaintiff was a common carrier on March 22, 1973 as defined by subdivision 15 of section 2 of the Transportation Law.
Common carriers are subject to all the provisions of article 7 of the Transportation Law including the filing of tariffs, etc. Section 177 provides that it shall be unlawful for anyone to knowingly and wilfully violate the “ article, or any rule, regulation, requirement or order thereunder ’ ’ and such a ‘ ‘ person ’ ’ shall be subject at least to a fine and in some instances shall be guilty of a misdemeanor (§ 177, subd. 3). Since the plaintiff did not have a license it was clearly in violation of article 7 of the Transportation Law. Does this violation of law make the contract illegal and therefore unenforceable ?
Where a contract cannot be performed without violating a law it is void and unenforceable. (Shedlinsky v. Budweiser Brewing Co., 163 N. Y. 437.) Generally where a statute makes it unlawful for an unlicensed person to engage in a designated business, such a contract made in violation thereof is void and unenforceable (Richardson, Contracts [5th ed.], § 139). Thus a statute which made it unlawful for one to engage in the business of master plumber unless registered, precluded an unregis *145 tered master plumber from recovering upon a contract (Johnston v. Dahlgren, 166 N. Y. 354). An illegal contract to split fees between a licensed dentist and a anesthesiologist was also held to be void and unenforceable (Radnay v. Schor, 41 Misc 2d 789).
To determine whether the Legislature intended that contracts made in violation of the Transportation Law should be rendered void thereby, one must look to the purpose of the statute. Distinction is made between statutes which are for the protection of the public and those designed for revenue. If the purpose is to protect the public against fraud or to safeguard public health and morals, contracts made in violaton thereof are void (10 N. Y. Jur., Contracts, § 125, Christophersen & Kiaer v. United States Nav. Co., 121 Misc. 778).
While the Transportation Law does not expressly prohibit recovery on a contract by an unlicensed trucker, the entire import of article 7 is to regulate the moving of property by people engaged in such business. The fines and penalties imposed for violations cannot be construed as revenue measures when each day of a violation constitutes a separate offense and fines range from $100 for the first offense to a maximum of $500 for any subsequent offense (§ 177, subd. 1). The Transportation Commissioner, after a hearing, is empowered, in addition to the other permissible penalties, to notify the Commissioner of Motor Vehicles of violations of article 7 and the Commissioner of Motor Vehicles is thereupon required to suspend the registration of all motor vehicles operated by the carrier and subject to article 7. Section 160 states the policy of the statute, as pertinent here, as follows: “1. It is hereby declared to be the policy of this state to regulate transportation by motor carriers in such manner as to recognize and preserve the inherent advantages of, and foster sound economic conditions in such transportation and among such carriers in the public interest-, promote adequate, economical, and efficient service by motor carriers, and reasonable charges therefor, without unjust discriminations, undue preferences or advantages, and unfair or destructive competitive practices ”. (Italics supplied.)
It is obvious that the Legislature intended that anyone not complying with article 7 should be put out of business until he complies with the statute. What other import could be given to the authority of the commissioner to effect a revocation of motor vehicle licenses for the very vehicles without which one cannot be in the business of transporting property by motor vehicle. Furthermore, the statute is intended to protect the con *146 sumer who uses the regulated service from fraud and unreasonable charges as well as the legitimate trucker from unfair competition.
I have found no case involving a contract made in violation of the New York Transportation Law. The case that comes closest to the issue at bar is Berger v. Dynamics Imports, (51 Misc 2d 988) which involved a shipper’s violation of the Interstate Commerce Act. There, the court held that a contract in violation of the Interstate Commerce Act violates the public policy of the United States and is therefore unenforceable. Nevertheless, Judge Salottolo of this court held that plaintiff was entitled to recover reasonable compensation for his services because he had performed the services and defendant had obtained the benefit thereof and to hold otherwise ‘ ‘ would be wholly out of proportion to the requirements of public policy or appropriate individual punishment. (Rosasco Creameries v. Cohen, 276 N. Y. 274; Schrier v. Kelloggs Pure Foods, 205 Misc. 767; Brand v. Gromet, 3 Misc 2d 991.) ”
In this case, I find that the reasoning in Berger does not apply. _
_ Public policy requires that in order to protect the consumer and the legitimate trucker from the fraudulent practices of unscrupulous truckers of which this case is a perfect example, that an unlicensed trucker should be denied the right to recover either in contract, or quantum meruit.
The case at bar is in this respect distinguishable from Rosasco Creameries v. Cohen (276 N. Y. 274, supra) upon which Judge Salottolo based his opinion. Where public policy requires that a party to an illegal contract should not be able to enforce it in the courts, it is immaterial that one party to the contract may be unjustly enriched, even where that party was aware of and participated in the illegality (see Toll v. Friedman, 272 App. Div. 587). I find that the public policy as expressed in the Transportation Law requires that unlicensed truckers should not be able to enforce their contracts in the courts.
I must also -mention that plaintiff’s attorney attempted to establish the legitimacy of plaintiff’s .business by pointing out that the Village Voice and New York Magazine have classified listings for “ unlicensed movers ”. While the Voice does have such a listing, the listings in New York Magazine are for “ licensed movers” and “ truckers/movers ”, Of course, legality cannot be established from a newspaper advertisement. The advertisements serve to prove that the unlicensed trucker *147 of household goods in the City of New York is operating in the open with impunity, that he can even use legitimate publications to entice the unwary consumer into his web of chicanery and that the Transportation Law has not been effectively enforced.
In view of the violation of the Transportation Law, and the brazen fraud and chicanery which I found, I am referring this matter to the Commissioner of Transportation for his consideration and action. The complaint is dismissed, and defendant may enter judgment on his counterclaim in the amount of $200.