OPINION OF THE COURT
Marshall C. Berger, J.
Plaintiff is the victim of a variant of the old pyramid club which has surfaced under the guise of the "airplane game”. For $1,500 paid to the "pilot”, a person or group of persons could buy 1 of 8 seats on an "airplane”. Above the 8 "passengers” were 4 "crew members”, 2 "copilots” and a "pilot”. When all of the passenger seats were sold then the old airplane would split into two with the passengers becoming crew members, the crew members becoming copilots and the copilots becoming pilots. The original pilot would take the $12,000 from the new passengers and "pilot out”. The new pilots and crew would then try to sell the seats in their planes so the whole process could be repeated.
Here plaintiff contributed $1,250 toward a seat in a plane *994 piloted by defendant and plaintiff now sues in Small Claims Court to recover that money now that her plane has "crashed”. The whole scheme is indisputably illegal under section 359-fff of the General Business Law which prohibits chain distribution schemes defined as a "sales device whereby a person upon condition that he make an investment, is granted a license or right to solicit or recruit for profit or economic gain one or more additional persons who are also granted such license or right upon condition of making an investment” (subd [2]). Here the scheme appears well organized and so popular that the promoters were able to fill up a 700-seat meeting hall. The testimony adduced at trial and the literature of the game marked as exhibits indicate the basic unfairness and illegality of the plan was sought to be camouflaged by using such MBA buzz words as seminar and workshop and a veneer of spirituality jargon. But the real motivating force appears to be a greed so overpowering that all four witnesses at trial testified that they played although they were apprehensive that the whole thing was illegal. Their avarice likewise blinded them to the mounting requirements of geometric progression which had to be satisfied if they were to successfully pilot out. Perhaps the best symbol of the real nature of the game is the reproduction in the game’s newsletter of the phrase "In God We Trust” the way it appears in the most secular of documents, the $1 bill.
Here the defendant appears to have been as duped as plaintiff. There is no evidence that she in any way organized or managed the scheme. Her only role at any of the meetings was take a bow without saying anything when she piloted out.
Similarly, although alleged by plaintiff, there is no proof that defendant committed fraud. Apparently she believed what she told plaintiff and everyone else on her "plane”. Indeed plaintiff testified that she made no money on the transaction, her winnings being eaten up by losses in a prior crash and by her subsequent purchase of a seat on a $3,000-a-seat plane. So there is certainly none of the clear and convincing proof of an intentional misrepresentation required to establish a fraud claim. (Jo Ann Homes at Bellmore v Dworetz, 25 NY2d 112 [1969].)
Thus the question presented is whether a loser in an illegal pyramid scheme can recover the moneys she gave the apparently innocent beneficiary of her game. The one case in the *995 context of a commercial franchising scheme on civil consequences of such schemes, Schaffer v Talerico (118 Misc 2d 66 [Utica City Ct 1983]), held that since they were against State public policy any right under them would be unenforceable.
However, a more persuasive authority is sections 5-419 and 5-421 of the General Obligations Law which allow a gambling loser to recover his losses from the winner. They manifest a policy that someone who has been fortunate enough to have made money from an illegal gambling scheme must disgorge his winnings to the loser. Applying such policy here is more persuasive than in the more typical gambling case. There the winner presumably would have won because he was luckier or perhaps as in gambling games like poker or in bets on sporting events had more skill or foresight. Here defendant won because she came first; the first participant has an inherent and usually decisive edge over the latecomer. There is no reason to let defendant keep what she won in so inherently unfair a game.
An analogous result was reached in Valentin v La Prensa (103 Misc 2d 875 [Civ Ct, Bronx County 1980]). There a newspaper ran a contest where it would award a prize to the child "voted” king of the infants by persons sending in coupons either clipped from their paper or purchased at 17 cents a coupon. Plaintiff was a proud parent who bought $1,000 of such coupons to vote for her infant son. The court awarded her the $1,000, holding the scheme an illegal lottery. Here putting aside the indisputably applicable language of General Obligations Law § 359-fff, the airplane scheme is also illegal as a lottery since it meets the three requirements of a lottery— consideration (the money paid for the seat); a prize (the money received when the participant "pilots out”) and chance (the uncertainty over whether the participants can find new participants, or, to put it bluntly, people even more foolish than they were in sufficient numbers to be able to pilot out). Even if the airplane game were not a lottery, allowing a loser to recover her loss would serve the purpose of section 359-fff by discouraging schemes illegal under it the same way that General Obligations Law §§ 5-419 and 5-421 discourage gambling enterprises. (Bamman v Erickson, 288 NY 133 [1942].)
While as stated earlier defendant’s dissipation of her winnings in other airplane games is an indication of her good *996 faith, it is not a defense to plaintiffs recovery on the rationale set forth above just as any other improvident frittering away of defendant’s gains, whether legally or illegally, would not constitute a defense.
The court is entering judgment for plaintiff and against defendant for $1,250.