OPINION OF THE COURT
Marylin G. Diamond, J.
Plaintiff, a 37-year-old single woman, read about People Resources (defendant), which describes itself as an "organization for singles”, in New York magazine. Plaintiff seeks the *526 return of $1,850 which she paid defendant pursuant to a contract between the parties. Plaintiff moves for summary judgment and sets forth the three following grounds: (1) that the contract is void as it violates General Business Law § 394-c; (2) that the contract was procured by fraudulent misrepresentation; and (3) that no services were rendered under the contract.
Defendant argues that summary judgment should be denied because General Business Law § 394-c does not apply. Defendant also claims that this court lacks jurisdiction to determine the validity of the contract between the parties because paragraph 24 of the contract provides for resolution of disputes by arbitration. Paragraph 24 states: "Any controversy or claim arising out of, or relating to this Agreement or the breach thereof, shall be settled by the American Arbitration Association, in the city of New York, in accordance with its rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.”
The undisputed relevant facts are as follows: Plaintiff read about defendant, which describes itself as an "organization for singles” in New York magazine. In March 1990, plaintiff signed a document with defendant characterized as an elite membership agreement providing her with all the benefits of membership in People Resources. While plaintiff denies that she knew the document was a contract, it clearly was.
Subscribers to defendant’s service prepare a written biography and video of themselves indicating basic information. These materials, including photographs, comprise a member’s profile which is kept in defendant’s library. All members have access to these materials. If one member wishes to meet another, he or she issues an invitation card which is left for the other member at the front desk. The invited member may then view the inviting member’s profile. If the invited member expresses interest, defendant provides the full name of the original member and his or her telephone number to the invited member.
The parties, however, disagree as to whether an extensive sales pitch was made to induce plaintiff to obtain her membership and whether the small print of the contract was discussed with her. The parties also disagree as to whether defendant was authorized by plaintiff to charge the $1,650 balance of the fee to plaintiff’s credit card.
The threshold issue for determination is whether defendant *527 is a "social referral service” as that term is defined by General Business Law § 394-c (1) which states: "As used in this section, the term 'social referral service’ shall include any service for a fee providing matching of members of the opposite sex, by use of computer or any other means, for the purpose of dating and general social contact.” (Emphasis added.)
If defendant is found to be a "social referral service” within the meaning of General Business Law § 394-c (1), the contract is defective in that (1) defendant charges an amount in excess of $250 in violation of section 394-c (2); (2) services are to be rendered over a period exceeding two years in violation of section 394-c (2); (3) the contract does not guarantee that plaintiff will receive a specified number of referrals per month in violation of section 394-c (3) or that the plaintiff will have the option to cancel if such number of referrals is not provided in violation of section 394-c (4) and (4) the contract does not provide the required bold face option to cancel in violation of section 394-c (7). In order to avoid the reach of the statute, defendant claims that since its organization does not actually match members but only provides a "forum” for its members to match themselves, defendant is not a "social referral service” within the ambit of General Business Law § 394-c (1).
The clear intent of the services provided by defendant is to arrange for unattached persons of the opposite sex to meet each other socially. Defendant advertises and holds itself out as "an oasis of social opportunity” and as a "cost effective method to select and meet 'quality singles’.” This is precisely the kind of activity which the statute seeks to regulate. Defendant cannot avoid the reach of the statute simply because it does not provide computer matches. The use of the comprehensive phrase "or any other means” in the statute demonstrates a clear legislative intent to broadly regulate this kind of activity. (See, State of New York v Leifer, 89 Misc 2d 724, 725 [Sup Ct 1976] ["By choosing the term 'general social contact’ the Legislature was using the most all-encompassing term and evidencing its intention to bring a broad area of business conduct within the statutory prohibition.”])
This interpretation is in accord with the statute’s legislative history. The memorandum of the New York Attorney-General supporting the legislation states that: "The Bureau of Consumer Frauds and Protection has received an alarming number of consumer complaints regarding social matching services. Many such services charge as much as $600 for their *528 services. Investigation indicates that this business is fraught with fraud and misrepresentation. Many companies have opened and then quickly closed due to financial difficulties or otherwise after receiving large sums of money from the public.” (1971 NY Legis Ann, at 96.)
Clearly, the distinction between a service that actually matches people for dating and one that provides the means for the match has no meaning in the context of the clear legislative intent to regulate this kind of activity no matter how it is accomplished or implemented. The services provided by defendant put defendant squarely within the statutory definition of a social referral service and therefore such services are subject to the proscriptions of General Business Law § 394-c.
Since defendant is a social referral service and subject to General Business Law § 394-c, the court must determine whether defendant’s statutory noncompliance constitutes an illegality which renders the contract void and unenforceable.
As noted above, the contract contains a number of serious violations of the applicable statute. As a general rule, contracts entered into in violation of a statute are illegal and unenforceable. (See, Shedlinsky v Budweiser Brewing Co., 163 NY 437 [1900]; Botany Indus. v New York Joint Bd., Amalgamated Clothing Workers, 375 F Supp 485, 490 [SD NY 1974]; Parsky Funeral Home v Shapiro, 83 Misc 2d 566, 567 [Rochester City Ct 1975].) This is particularly true if the statute was enacted for the protection of the public against fraud as opposed to a statute enacted for the generation of revenue. (See, Anton Sattler, Inc. v Cummings, 103 Misc 2d 4 [Sup Ct 1980]; East Coast Moving & Stor. v Flappin, 78 Misc 2d 140, 145 [NY City Civ Ct 1974].
Since General Business Law § 394-c was designed to protect consumers (see, L 1971, ch 559; mem of Attorney-General, 1971 NY Legis Ann, at 96), the agreement between the parties hereto is void and unenforceable. Further, despite the statute’s silence as to the penalty for noncompliance, public policy demands that in order to insure public compliance with the statute, noncomplying contracts be deemed void and unenforceable. If such contracts were to be enforced either in whole or in part, it is certain that social referral services would continue to violate the statute with impunity, secure in the knowledge that the only penalty they face will be a reduction in their fee to the statutory limit. It cannot be presumed that contracts barred by the statute should be *529 accompanied by no other consequence than the reduction of the fee. (See, Carmine v Murphy, 285 NY 413 [1941]; see also, Stamford Bd. of Educ. v Stamford Educ. Assn., 697 F2d 70, 73 [2d Cir 1982] ["courts must not be timid in voiding agreements which tend to injure the public goods or contravene some established interest of society”].)
Defendant contends that regardless of whether the contract as a whole is invalid, the dispute should be submitted to arbitration. This misstates the law. The general rule is that where a contract is void and unenforceable, the arbitration clause contained therein is also unenforceable. (Village of Tarrytown v Woodland Lake Estates, 19 NY2d 660 [1967]; City of Zanesville v Mohawk Data Sciences Corp., 97 AD2d 64 [4th Dept 1983].) One cannot logically find a contract void and still uphold a provision of the very same contract.
Defendant’s reliance on Matter of Prinze (Jonas) (38 NY2d 570 [1976]) is misplaced. In that case, it was possible to enforce the arbitration clause of the contract because an illegal option term in violation of General Obligations Law former § 3-105 (2) (d) did not render the agreement void as a matter of law pursuant to General Obligations Law § 3-101. In the instant case, the contract is so violative of the applicable statute that it is a nullity.
For the reasons stated above, plaintiffs motion for summary judgment is granted. Defendant’s cross motion for summary judgment is denied.