**Helen RHODES, on Behalf of Herself and All Others Similarly Situated, Plaintiff,**

v.

**CONSUMERS' BUYLINE, INC. and Keith Raniere, Defendants.**

Civ. A. No. 92–10877–K.

United States District Court, D. Massachusetts.

May 10, 1993.

Douglas M. Brooks, Martland & Brooks, Kenneth G. Gilman, Gilman & Pastor, Boston, MA, for plaintiff Helen Rhodes.

James D. Masterman, Mary E. O'Neal, Masterman, Culbert & Tully, Boston, MA, Garret G. Rasmussen, Jean V. MacHarg, Mark W. Porter, Patton, Boggs & Blow, Washington, DC, for defendant Consumers' Buyline, Inc. and Keith Raniere.

## Memorandum and Order

KEETON, District Judge.

In this civil action, plaintiff has alleged that defendants violated various provisions of federal and state law, including federal securities law, RICO, and state consumer protection law. Plaintiff also seeks to represent a putative class of similarly situated individuals with similar claims against defendants. Now before the court are defendants' Motion to Dismiss First Amended Complaint or, in the Alternative, to Stay These Proceedings as to Any Remaining Claims, and to Deny Class Certification, together with Memorandum in Support (Docket Nos. 16 and 17, filed September 28, 1992), Plaintiff's Memorandum in Opposition (Docket No. 27, filed November 20, 1992), Defendants' Reply Memorandum (Docket No. 30, filed December 11, 1992), and Plaintiff's Motion for Leave to File Supplemental Memorandum in Opposition, together with Supplemental Memorandum in Opposition (Docket No. 31, filed January 4, 1993).

## I. Background

Plaintiff Helen Rhodes is an individual who resides in Massachusetts. Defendant Consumers' Buyline, Inc. ("CBI") is a corporation organized under the laws of New York. Defendant Keith Raniere is the president of CBI. Plaintiff alleges that she invested and lost approximately $500.00 in CBI's marketing operation, which plaintiff alleges to be an illegal "pyramid" scheme.

According to CBI promotional literature supplied by plaintiff, CBI operates both as a consumer purchasing organization, through which members obtain the "lowest possible prices" for various products and services, and as a multilevel sales organization through which "affiliates" may earn profits on the sale of memberships to others, with greater profits accruing to affiliates whose recruits in

turn sell further memberships. The more "downline" members—that is, members recruited by an affiliate or recruited by recruits of that affiliate—in an affiliate's matrix, the greater the profits earned by that affiliate. Theoretically, an affiliate need do no more than sell one additional "row" of two new members, who then each sell an additional row of members, and so forth, in order to earn ever increasing profits. CBI distinguishes between "members", who pay an initial fee to join and then a monthly fee to participate in various consumer purchasing programs, and "affiliates", who earn commissions on memberships sold and on the monthly fees paid by those members. Plaintiff alleges that the distinction between members and affiliates is artificial and is a disingenuous attempt to evade state and federal laws that would unavoidably be triggered if CBI required affiliates—that is, participants in the matrix sales operation—to make an initial investment. Plaintiff alleges that CBI's overall system creates a strong incentive—virtually a requirement—that affiliates also become members and that the vast majority of affiliates do become members.

## II. Choice of Law

Because it is relevant to the effect of the arbitration provision contained in the alleged agreement between the parties, and hence to the jurisdiction of this court, the first issue that I address is the choice of law governing the alleged contract between plaintiff and defendants. The existence and interpretation of a contract are generally questions of state law. Here, plaintiff contends that New York law should govern the agreement between the parties. Defendants also contend that New York law governs the agreement, except where preempted by the Federal Arbitration Act. Plaintiff has provided copies of several CBI form agreements, including the form of Member And/Or Affiliate Application (the "Agreement") that the named plaintiff and defendant CBI allegedly signed and from which this dispute arises. Although plaintiff has not provided a signed copy of the alleged Agreement, defendants have not challenged the accuracy or authenticity of the forms supplied by plaintiff and indeed rely upon the choice of law and arbitration paragraph therein. Both the Member And/Or Affiliate Application and the separate Affiliate Application contain the following choice of law provision: "This agreement is governed under the laws of the state of New York." The same paragraph of the Agreement also provides for arbitration to be held in Clifton Park, New York. It is also undisputed that defendant Consumers' Buyline, Inc. is a corporation organized under the laws of the state of New York, with its principal place of business in Clifton Park, New York.

In addition, plaintiff's proposed class allegedly consists of thousands of persons throughout the United States who entered into agreements with CBI. Thus, for choice of law purposes, there is no persuasive reason to choose the state of residence of any particular plaintiff, including that of the named plaintiff (Massachusetts), as the jurisdiction whose law will govern the interpretation of any such agreement.

■ I conclude that the New York law governs the alleged Agreement between plaintiff and defendants because (1) the form of Agreement expressly so provides, and defendant implicitly admits that such a form was signed by the parties, (2) defendant CBI conducts its business as a New York corporation from its headquarters in the state of New York, (3) defendants contend that New York law should govern the Agreement (except where preempted by federal arbitration law), and (4) plaintiff assents to the application of New York law to govern the Agreement. *See In re Newport Plaza Assocs., L.P.,* 985 F.2d 640, 644 (1st. Cir.1993) ("When opposing parties agree to the source of the substantive law that controls their rights and obligations, and no jurisdictional concerns are present, a court is at liberty to accept such an agreement without independent inquiry.")

## III. Effect of Arbitration Provision

Defendants argue that proceedings on plaintiff's amended complaint should be dismissed, or, to the extent such proceedings are not disposed of on the merits of defendants' motion to dismiss, that proceedings should be stayed pending arbitration.

The alleged Agreement contains the following arbitration clause of extraordinary breadth, which purports to require the arbitration of any dispute between the parties, not limited by its terms to disputes arising out of the Agreement: "The parties agree that any claim, dispute or other difference between them shall be exclusively resolved by binding arbitration pursuant to the Commercial Arbitration Rules of the American Arbitration Association with arbitration to occur in Clifton Park, New York." This case does not present, however, and the court does not reach, the issue of the valid application of such a broad arbitration provision beyond the scope of the underlying contract. Here, the dispute arises from the subject matter of the Agreement itself and thus does not raise the issue of the possible overbreadth of the arbitration clause.

Defendants rely principally upon § 3 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 3, in arguing that claims not dismissed should be referred to arbitration. Section 3 of the FAA provides as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C.A. § 3 (West 1993).

The Agreement itself contains a New York choice of law provision, and, as explained above, I have concluded that the Agreement is to be governed by New York law. Plaintiff contends that the subject matter of the Agreement is illegal under New York law (as well as the law of most other U.S. jurisdictions) and that the entire contract, along with the arbitration clause contained therein, is void. According to plaintiff's allegations—based in large part on information contained in CBI's own literature—the core of CBI's marketing program consists of "affiliates" of CBI selling the right to others to become "affiliates" or "members" of CBI. New affiliates, in turn, sell the right to still other persons to become affiliates or members. Greater profits accrue to affiliates who obtain more "downline" affiliates or members. Defendants do not deny the basic manner of operation of CBI, but deny that any aspect of CBI's system is illegal.

■ New York General Business Law § 359–fff bans so-called "chain distributor schemes." As is defined under the statute:

> [A] "chain distributor scheme" is a sales device whereby a person, upon condition that he make an investment, is granted a license or right to solicit or recruit for profit or economic gain one or more additional persons who are also granted such license or right upon condition of making an investment and may further perpetuate the chain of persons who are granted such license or right upon such "condition."

N.Y.Gen.Bus.Law § 359–fff(2) (McKinney 1993). In *State v. Phase II Systems, Inc.,* 109 Misc.2d 598, 440 N.Y.S.2d 454 (N.Y.Sup. Ct.1981), the court granted an injunction against a scheme where, as alleged here, the emphasis was not on sale of any product but on recruiting new organizational rows to boost existing members; the court found a likelihood that the scheme violated § 359–fff. I conclude that plaintiff's allegations, if proved, would bring defendant CBI's operation within the proscription of § 359–fff. (I note that were the court to apply the law of Massachusetts—the named plaintiff's state of residence—CBI's system would similarly run afoul of Mass.Gen.Laws Ann. ch. 93, § 69 (West 1993), which prohibits so-called "multi-level distribution companies".)

■ This court has jurisdiction to decide the dispute as to the arbitrability of the underlying substantive claims in this case. *Shearson Lehman Bros., Inc. v. Brady,* 783 F.Supp. 1490, 1493 (D.Mass.1991) (Keeton, J.) (citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 20, 103 S.Ct. 927, 939, 74 L.Ed.2d 765 (1983); *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218, 105 S.Ct. 1238, 1241, 84 L.Ed.2d 158 (1985)). Under New York law, the court

likewise has the power to determine the validity of the agreement to arbitrate. "Where the existence or validity of an arbitration agreement itself is timely raised by a party seeking a stay of arbitration or opposing an application to compel arbitration, issues relating to the validity of the contract must be determined by the court." *Housekeeper v. Lourie*, 39 A.D.2d 280, 283, 333 N.Y.S.2d 932, 936 (N.Y.App.Div.1972) (citation omitted).

Absent any supportable contention otherwise by the contracting parties, the effect of an arbitration clause upon claims brought in a United States district court is determined according to federal law developed under the FAA. Under federal law, even the allegation that the substantive provisions of a contract are illegal may be insufficient to permit a federal court to adjudicate a dispute that is otherwise referable to arbitration. *See Hamilton Life Ins. Co. v. Republic National Life Ins. Co.*, 408 F.2d 606, 610 (2nd Cir.1969); *Russolillo v. Thomson McKinnon Securities, Inc.*, 694 F.Supp. 1042, 1045 (D.Conn.1988). Where, however, parties to a contract containing an arbitration clause have specified that the contract is governed by the law of a particular jurisdiction, a federal court generally may apply the law of the specified jurisdiction, not federal law, to determine the applicability of ·the arbitration provision. *Volt Information Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989); *Saturn Distribution Corp. v. Williams*, 905 F.2d 719, 727 (4th Cir.1990); *Flight Systems v. Paul A. Laurence Co.*, 715 F.Supp. 1125, 1127 (D.D.C.1989). Ordinarily a federal court applies federal law, notwithstanding the state choice of law provision, only where the court concludes that the parties did not intend state arbitration law to apply, *Barbier v. Shearson Lehman Hutton, Inc.*, 752 F.Supp. 151, 156–157 (S.D.N.Y.1990), or where state law contravenes federal arbitration policy, *Fahnestock & Co., Inc. v. Waltman*, 935 F.2d 512, 517 (2nd Cir.1991). Here, the same paragraph of the Agreement that provides for arbitration also specifies that New York law governs the contract. "By including the [New York] choice-of-law provision, the parties indicated their intention to arbitrate to the extent allowed by [New York] law. Under *Volt*, this choice is not preempted by the FAA policy in favor of arbitration." *Armco Steel Co., L.P. v. CSX Corp.*, 790 F.Supp. 311 (D.D.C.1991) (citation omitted). For the foregoing reasons, I conclude that the parties intended that New York law, including New York arbitration law, govern the interpretation of the Agreement and the effect of the arbitration clause.

Under New York law, "[w]hen a contract is to do a thing which cannot be performed without the violation of the law it is void...." *Shedlinsky v. Budweiser Brewing Co.*, 163 N.Y. 437, 439, 57 N.E. 620 (1900). New York courts have also specifically held that agreements involving a "pyramid" selling plan "[b]y which profits are promised to each buyer in turn persuading others to buy," where such agreements were not registered under the Securities Act of 1933, violate both federal securities law and New York statutes, rendering the agreements "void as a matter of law." *Mahoney v. Andresen*, 72 Misc.2d 1054, 1055–1057, 340 N.Y.S.2d 553, 554–557 (N.Y.City Civ.Ct. 1973). *See also East Coast Moving & Storage, Inc. v. Flappin*, 78 Misc.2d 140, 145, 355 N.Y.S.2d 525, 531 (N.Y.City Civ.Ct.1974) ("If the purpose [of à statute] is to protect the public against fraud ... contracts made in violation thereof are void").

Moreover, under New York law, the arbitration clause of a void and unenforceable contract is itself void and unenforceable. "[P]roceedings to enforce arbitration under [New York law] presuppose the existence of a valid and enforceable contract at the time the remedy is sought." *In re Kramer & Uchitelle, Inc.*, 288 N.Y. 467, 471, 43 N.E.2d 493, 495 (1942) (citations omitted). Where the contract is invalid and void, "[t]he arbitration clause therein falls with the contract and is unenforceable." *Tarrytown v. Woodland Lake Estates, Inc.*, 19 N.Y.2d 660, 661, 225 N.E.2d 547, 278 N.Y.S.2d 853 (1967). *See Zanesville v. Mohawk Data Sciences Corp.*, 97 A.D.2d 64, 468 N.Y.S.2d 271 (N.Y.App.Div.1983) (where contract in its entirety is invalid and void, arbitration clause contained therein is of no force and effect and could not be enforced). *Cf. Weinrott v.*

*Carp,* 32 N.Y.2d 190, 197, 344 N.Y.S.2d 848, 855, 298 N.E.2d 42, 46 (1973) (although arbitration clause is separable from substantive provisions of contract, "[i]f the alleged fraud [in the inducement of a contract] was part of a grand scheme that permeated the entire contract, including the arbitration provision, the arbitration provision should fall with the rest of the contract").

New York courts have held that where, as here, the subject matter of a contract appears to be specifically forbidden by statute, the entire contract, including an arbitration clause, is null and void. *See Chassman v. People Resources,* 151 Misc.2d 525, 573 N.Y.S.2d 589 (N.Y.City Civ.Ct.1991) (where organization violated statute regulating "social referral services", contract between organization and consumer, including arbitration clause, held void and unenforceable; plaintiff awarded summary judgment for return of membership fee).

Thus, for the purpose of determining the jurisdiction of this court to hear plaintiff's claims, I conclude that plaintiff has alleged sufficient facts to permit a finding that defendants' marketing operation violates N.Y.Gen. Bus.Law § 359–fff, rendering the entire Agreement—including the arbitration clause—void.

An alternative basis for this court's jurisdiction is the so-called "public policy" exception to arbitration. New York courts recognize a public policy exception to the general enforceability of arbitration agreements, providing for judicial intervention where the issue in dispute involves a violation of public policy. *Port Washington Union Free School Dist. v. Port Washington Teachers Ass'n,* 45 N.Y.2d 411, 417, 408 N.Y.S.2d 453, 455, 380 N.E.2d 280, 283 (1978). The exception is limited to cases where "[t]he illegality or other strong public policy has a readily identifiable source in the statutes or common-law principles." *Id.* at 422, 408 N.Y.S.2d at 459, 380 N.E.2d at 286 (Breitel, C.J., concurring). *See also In re Heilman,* 188 A.D.2d 294, 590 N.Y.S.2d 495 (1992) ("It is only where an arbitrator seeks to enforce a contract that is against public policy or otherwise illegal that a court will interfere with the arbitrator's powers"). As stated by New York's highest court, "[t]he broadest of arbitration agreements cannot oust our courts from their role in the enforcement of major State policies, *especially those embodied in statutory form.*" *Hirsch v. Hirsch,* 37 N.Y.2d 312, 315, 333 N.E.2d 371, 373, 372 N.Y.S.2d 71, 73 (1975) (citation omitted) (emphasis added). Here, plaintiff has alleged sufficient facts—supported by documentary submissions—to bring the alleged marketing scheme that is the subject of the Agreement within the proscription of N.Y.Gen.Bus.Law § 359–fff. Thus, for the purpose of determining the jurisdiction of this court to hear plaintiff's claims, I conclude that the issue of the legality of defendants' marketing plan and the related contracts falls within the public policy exception to arbitrability as announced by New York courts.

For the foregoing reasons, I hold that plaintiff's claims are not properly referable to arbitration. Defendants' motion to stay proceedings and refer plaintiff's claims to arbitration is denied.

## IV. Defendants' Arguments For Dismissal of Substantive Claims

I will now examine defendants' arguments for dismissal of the eleven causes of action alleged in plaintiff's First Amended Class Action Complaint.

### A. Federal Securities Law Claims

Plaintiff's first claim for relief is based on defendants' alleged violation of Section 12(1) of the Securities Act of 1933, 15 U.S.C. § 77*l* (1). Defendants have not asserted any grounds for dismissal of this claim. Defendants' motion to dismiss plaintiff's first claim for relief is therefore denied.

Plaintiff's second claim for relief is based on defendants' alleged violation of Section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l* (2). Defendants argue that plaintiff's allegations lack the particularity required by Fed.R.Civ.P. 9(b). Rule 9(b) of the Federal Rules of Civil Procedure provides that: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

Malice, intent, knowledge and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b). Plaintiff's First Amended Complaint ("Amended Complaint") contains some 24 pages of factual allegations describing details of the CBI marketing system, including securities aspects of that system, and describing alleged fraudulent misrepresentations made by CBI to plaintiff. Plaintiff also describes her participation in the CBI system, including the approximate date and amount of her investment. I conclude that plaintiff has stated the circumstances constituting the alleged securities fraud with sufficient particularity to meet the requirements of Fed.R.Civ.P. 9(b). Accordingly, defendants' motion to dismiss plaintiff's second claim for relief is denied.

Plaintiff's third claim for relief is based on defendants' alleged violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b). Defendants argue that plaintiff's allegations lack the particularity required by Fed.R.Civ.P. 9(b). For the reasons described above in discussing plaintiff's second claim for relief, defendants' motion to dismiss plaintiff's third claim for relief is denied.

### B. Civil RICO Claims

Plaintiff's fourth claim for relief is based on defendants' alleged violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(a). Defendants argue that plaintiff has failed to allege an essential element of a valid cause of action under § 1962(a)—that plaintiff suffered injury from the use or investment of racketeering income.

■ Section 1962(a) makes unlawful the use or investment of racketeering-derived income in the operation of any enterprise that affects interstate commerce. As in *Rhone v. Energy North, Inc.*, 790 F.Supp. 353, 357 (D.Mass.1991), here "[defendants] advance[ ] and [plaintiff] rejects the so-called 'investment use rule' which requires that, in order to state a claim under section 1962(a), a plaintiff must allege a specific injury flowing from the investment and use of racketeering proceeds." In *Rhone*, Judge Young held that the investment use rule applies to § 1962(a) claims. *Id.* Similarly, in *Eastern*

*Corporate Federal Credit Union v. Peat, Marwick, Mitchell & Co.*, 639 F.Supp. 1532, 1537 (D.Mass.1986), Judge Tauro stated that "[t]he gravamen of the offense under § 1962(a) is not the racketeering activity itself, but the subsequent use and investment of the proceeds." Other district court decisions in the First Circuit likewise support application of the investment use rule for § 1962(a) claims. *McIntyre v. Okurowski,* 717 F.Supp. 10, 13 n. 5 (D.Mass.1989) (Tauro, J.); *Rodriguez v. Banco Central,* 727 F.Supp. 759, 771 (D.P.R.1989) (Fuste, J.), *aff'd in relevant part,* 917 F.2d 664 (1st Cir.1990).

The First Circuit has not directly addressed the applicability of the investment use rule; however, all but one of the other circuit courts that have addressed this issue have held that the rule applies to § 1962(a) claims. *See Danielsen v. Burnside–Ott Aviation Training Center, Inc.,* 941 F.2d 1220, 1229 (D.C.Cir.1991); *Ouaknine v. MacFarlane,* 897 F.2d 75, 82–83 (2d Cir.1990); *Rose v. Bartle,* 871 F.2d 331, 357–58 (3rd Cir. 1989); *Craighead v. E.F. Hutton & Co.,* 899 F.2d 485, 494 (6th Cir.1990); *Hemmings v. Barian,* 822 F.2d 688, 692 (7th Cir.1987); *Nugget Hydroelectric, L.P. v. Pacific Gas and Elec. Co.,* 981 F.2d 429, 437 (9th Cir. 1992); *Grider v. Texas Oil & Gas Corp.,* 868 F.2d 1147, 1149 (10th Cir.), *cert. denied,* 493 U.S. 820, 110 S.Ct. 76, 107 L.Ed.2d 43 (1989). *Contra, Busby v. Crown Supply, Inc.,* 896 F.2d 833, 837 (4th Cir.1990).

■ I hold that the investment use rule applies to § 1962(a) claims and that plaintiff has failed to allege any injury specifically resulting from the use or investment of defendants' profits, as contrasted with injury resulting from the alleged underlying racketeering activity itself (i.e., CBI's recruiting operation). I therefore conclude that plaintiff has failed to state a claim upon which relief may be granted under 18 U.S.C. § 1962(a). Accordingly, defendants' motion to dismiss plaintiff's fourth claim for relief is allowed.

Plaintiff's fifth claim for relief is based on defendants' alleged violation of 18 U.S.C. § 1962(c). Defendants argue that, in order to state a valid § 1962(c) claim, plaintiff must

allege a RICO "enterprise" wholly separate and distinct from the "person" (the RICO defendant) to be held liable.

Section 1962(c) makes unlawful the conduct or participation in the conduct of an enterprise's affairs through a pattern of racketeering activity, where the enterprise affects interstate commerce. Plaintiff's amended complaint alleges that defendants CBI and Raniere were associated with "one or more enterprises" that "consisted of associations in fact of all Defendants and all corporate officers, directors, and insiders, including CBI, and any of their affiliates, involved ... in the promotion of CBI's pyramid marketing scheme (the 'CBI Enterprise')." Amended Complaint ¶ 95.

Plaintiff's amended complaint, however, nowhere describes an "enterprise" separate or different from the named defendants. It is the law of this circuit that:

> [S]ection 1962(c) states that it is unlawful for any person associated with an enterprise to conduct that enterprise through racketeering. The enterprise is mentioned in the section only as the instrument of the person doing the racketeering, and there is no suggestion that the enterprise also may be liable, even if it is a wholly illegitimate operation.... "[I]t is only a person, or one associated with an enterprise, not the enterprise itself, who can violate the provisions of [§ 1962(c)]." *Van Schaick v. Church of Scientology of California,* 535 F.Supp. 1125, 1136 (D.Mass.1982).

*Schofield v. First Commodity Corp.,* 793 F.2d 28, 30 (1st Cir.1986). In *Schofield,* the First Circuit held that § 1962(c) cannot "[b]e read to allow corporations to serve as both the RICO person and the RICO enterprise" for the purpose of holding the corporation directly liable. *Id.* at 32. The court also rejected the argument that a corporation could be liable under § 1962(c) on a *respondeat superior* basis where the corporation was not directly liable. *Id.* at 33–34. *See also Miranda v. Ponce Federal Bank,* 948 F.2d 41, 45 (1st Cir.1991).

In *Odishelidze v. Aetna Life & Cas. Co.,* 853 F.2d 21 (1st Cir.1988), the First Circuit further analyzed the applicability of § 1962(c). In *Odishelidze,* as here, "[plaintiff] has continued to characterize the enterprise as [defendant company] and its subsidiaries and employees without specifically identifying a defendant, distinct from the enterprise, which conducted the enterprise's activities through a pattern of racketeering activity." *Id.* at 23. As noted by the court in that case, however, "the [defendant] companies and their officers or employees (the named defendants) cannot be the entity that conducts its own affairs through a pattern of racketeering activity." *Id.* (citing *Schofield*). "[O]nly some 'person' *other than* the 'enterprise' can conduct or help conduct that enterprise's affairs. Hence the unlawful enterprise itself cannot also be the person the plaintiff charges with conducting it." *Arzuaga–Collazo v. Oriental Federal Sav. Bank,* 913 F.2d 5, 6 (1st Cir.1990) (citation omitted). As further explained by Judge Fuste in *Rodriguez v. Banco Central,* 777 F.Supp. 1043 (D.P.R.1991), *aff'd,* 990 F.2d 7 (1st Cir.1993):

> The distinction requirement [between "enterprise" and "person" who violates the statute] is not satisfied by merely naming a corporation and its employees, affiliates, and agents as an association-in-fact, since a corporation acts through its employees, subsidiaries and agents, and would thereby be merely associating with itself. Where the plaintiffs have suffered harm at the hands of an enterprise that consists only of a single corporation and its employees, subsidiaries or agents, the plaintiffs "must choose between the corporation and its constituents as persons liable." If the plaintiff chooses to identify the corporation as the enterprise through which its employees, as persons, conducted the RICO activity, the corporation is insulated from liability.

*Id.* at 1054 (citations omitted).

I conclude that, in this case, plaintiff has failed to identify any enterprise separate or different from the named defendants, CBI and its president. Moreover, even assuming plaintiff wishes to choose between the named defendants for purposes of § 1962(c), plaintiff has not indicated whether she claims that CBI is the "enterprise" and Raniere the "person" or vice versa. The court is unwilling to speculate as to plaintiff's intended

legal theory where there is no basis in the Amended Complaint for so doing, especially where the alternative theories could yield such different outcomes. Accordingly, defendants' motion to dismiss plaintiff's fifth claim for relief is allowed.

Plaintiff's sixth claim for relief is based on defendants' alleged violation of RICO § 1962(d). Plaintiff alleges that defendants "conspired to conduct and to participate in the conduct of" the "enterprises" described in plaintiff's fifth claim for relief. Amended Complaint ¶ 104. Section 1962(d) makes unlawful the conspiracy to violate subsections (a), (b), or (c) of § 1962. Defendants urge dismissal of this claim on the grounds that (1) a corporation and its officers are incapable of conspiring for purposes of § 1962(d), and (2) the dismissal of plaintiff's underlying § 1962(a) and § 1962(c) claims requires dismissal of the § 1962(d) conspiracy claim.

 Although there is some split of authority among federal district courts, the majority rule—and, in the court's opinion, the better rule—is that, for purposes of § 1962(d), a corporate entity is incapable of "conspiring" with its own officers and employees. *See, e.g., Northeast Jet Center, Ltd. v. Lehigh–Northampton Airport Auth.*, 767 F.Supp. 672, 684–685 (E.D.Pa.1991); *Helman v. Murry's Steaks, Inc.*, 742 F.Supp. 860, 883 (D.Del.1990); *Almon v. State Farm Fire and Cas. Co.*, 724 F.Supp. 765, 766 (S.D.Cal.1989); *McIntyre's Mini Computer Sales Group, Inc. v. Creative Synergy Corp.*, 644 F.Supp. 580, 585 (E.D.Mich.1986); *McLendon v. Continental Group, Inc.*, 602 F.Supp. 1492, 1510–1512 (D.N.J.1985). *Contra Ashland Oil, Inc. v. Arnett*, 875 F.2d 1271, 1281 & n. 10 (7th Cir.1989) (collecting cases). Because a corporation can act *only* through its officers and agents, and because no entity can "conspire" with itself, a corporation acting through its officers, even where the act is unlawful, does not constitute a "conspiracy" for purposes of § 1962(d). In *Gaudette v. Panos*, 650 F.Supp. 912 (D.Mass.1987), *rev'd on other grounds*, 852 F.2d 30 (1st Cir.1988), Judge Caffrey held that plaintiffs could not state a claim for § 1962(d) conspiracy between a broker and the brokerage firm that employed him.

Here, plaintiff bases her § 1962(d) claim on her allegation that defendants' operation amounted to a conspiracy between CBI and Raniere, CBI's president. Because I hold that it is impossible for a corporate officer to "conspire" with the corporation for purposes of § 1962(d), plaintiff has failed to state a claim upon which relief may be granted. Moreover, because I have dismissed plaintiff's underlying § 1962(a) and § 1962(c) claims and because every conspiracy requires an illegal objective (here, at least a colorable claim of a violation of § 1962(a) or § 1962(c)), I must also dismiss plaintiff's § 1962(d) claim. *See Miranda v. Ponce Federal Bank*, 948 F.2d 41, 45 n. 4 (1st Cir.1991) (where underlying § 1962(c) claim was invalid, § 1962(d) claim alleging conspiracy to violate § 1962(c) was likewise invalid). For the foregoing reasons, defendants' motion to dismiss plaintiff's sixth claim for relief is allowed.

## C. State Law Claims

Plaintiff's seventh claim for relief is based on defendants' alleged common law fraud and deceit. Defendants argue that plaintiff's allegations lack the particularity required by Fed.R.Civ.P. 9(b). For the reasons described above in discussing plaintiff's second claim for relief, I conclude that plaintiff has stated the circumstances constituting the alleged common law fraud and deceit with sufficient particularity to meet the requirements of Fed.R.Civ.P. 9(b). Accordingly, defendants' motion to dismiss plaintiff's seventh claim for relief is denied.

Plaintiff's eighth claim for relief is based on defendants' alleged false advertising in violation of the New York Consumer Protection Act, N.Y.Gen.Bus.Law § 350. Defendants argue that plaintiff's allegations lack the particularity required by Fed.R.Civ.P. 9(b). For the reasons described above in discussing plaintiff's second claim for relief, I conclude that plaintiff has stated the circumstances constituting the alleged false advertising with sufficient particularity to meet the requirements of Fed.R.Civ.P. 9(b). Accordingly, defendants' motion to dismiss plaintiff's eighth claim for relief is denied.

Plaintiff's ninth claim for relief requests a declaration that the CBI marketing operation constitutes an illegal "chain distributor scheme" within the meaning of N.Y.Gen.Bus. Law § 359–fff. Defendants argue that plaintiff's request must be dismissed under Fed. R.Civ.P. 12(b)(6) on the grounds that there is no private right of action, express or implied, under § 359–fff.

Section 359–fff is a provision of New York's "blue sky" law, better known as the Martin Act. Plaintiff does not argue that there is an express private right of action under § 359–fff. Rather, plaintiff urges this court to follow the holding of a lower New York court that recognized an implied private right of action under § 359–fff. *See Solon v. Meuer,* 141 Misc.2d 993, 995, 539 N.Y.S.2d 241, 243 (N.Y.City Civ.Ct.1987). In *CPC Int'l Inc. v. McKesson Corp.,* 70 N.Y.2d 268, 276–277, 514 N.E.2d 116, 119, 519 N.Y.S.2d 804, 807 (1987), decided two months before *Solon,* the New York Court of Appeals held that there is no implied private cause of action for violations of § 352–c of the Martin Act (pertaining to fraud in the sale of securities and other property), and the court strongly hinted that it would not recognize an implied private cause of action under *any* provision of that act. In *Vermeer Owners, Inc. v. Guterman,* 78 N.Y.2d 1114, 585 N.E.2d 377, 578 N.Y.S.2d 128 (1991), the Court of Appeals extended its holding in *CPC Int'l* to § 352–e, another provision of the Martin Act (which pertains to real estate syndication offerings). In *Vermeer Owners,* the court explained that "[o]ur decision in *CPC* rested on a determination that 'an implied private [cause of] action is not consistent with the legislative scheme underlying the Martin Act.'" *Id.* at 1116, 585 N.E.2d at 378, 578 N.Y.S.2d at 129 (quoting *CPC Int'l*). Thus, it is unlikely that the New York Court of Appeals would recognize an exception to its strongly expressed policy against implication of private causes of action under the Martin Act as urged by plaintiff for § 359– fff. I therefore hold that plaintiff is not entitled to seek a declaration that CBI's marketing operation violates N.Y.Gen.Bus.Law § 359–fff. Accordingly, defendants' motion to dismiss plaintiff's ninth claim for relief is allowed.

Plaintiff's tenth claim for relief is based on defendants' alleged deceptive acts and practices in violation of the New York Consumer Protection Act, N.Y.Gen.Bus.Law § 349. Defendants argue that plaintiff's allegations lack the particularity required by Fed. R.Civ.P. 9(b). For the reasons described above in discussing plaintiff's second claim for relief, I conclude that plaintiff has stated the circumstances constituting the alleged deceptive acts and practices with sufficient particularity to meet the requirements of Fed.R.Civ.P. 9(b). Accordingly, defendants' motion to dismiss plaintiff's tenth claim for relief is denied.

### D. Federal Lottery Law Claim

Plaintiff's eleventh claim for relief requests a declaration that the CBI marketing operation constitutes an illegal lottery in violation of 39 U.S.C. § 3005. Defendants argue that plaintiff's request must be dismissed under Fed.R.Civ.P. 12(b)(6) on the grounds that there is no private right of action, express or implied, under 39 U.S.C. § 3005. Plaintiff does not argue that there is an express private right of action under § 3005, but urges the court to recognize an implied private right of action.

The federal statute at issue, 39 U.S.C. § 3005, is not a general prohibition on the use of the mails to offer a lottery. Rather, § 3005 is a remedial provision that authorizes the Postal Service to intercept and return mail, and to refuse payment of money orders, deemed to have been sent to a person conducting a lottery. A different federal statute, 18 U.S.C. § 1302, criminalizes the mailing of lottery materials by any person. Were a court to recognize an implied private right of action for illegally conducting a lottery by use of the mails, the appropriate federal statute would be the criminal provision, 18 U.S.C. § 1302, not the administrative provision that relates solely to internal action by the Postal Service, 39 U.S.C. § 3005. No published case addresses the issue of a private cause of action under 39 U.S.C. § 3005. In one unpublished case, however, the court stated that "[t]here is no indication that § 3005 creates a private right of action on behalf of a lottery participant." *Simmons v.*

*New York State Lottery Comm'n,* No. 87 CV 4029, 1988 WL 52219, at *1 (E.D.N.Y. May 10, 1988). Moreover, the court in *Simmons* correctly noted that 39 U.S.C. § 3001(f) requires that "[p]roceedings under § 3005 ... first be brought before administrative agencies, not the courts." *Id.*

Similarly, the two reported cases concerning a private right of action under 18 U.S.C. § 1302 hold that there is no such private right of action. *See Bell v. Health–Mor, Inc.,* 549 F.2d 342, 346 (5th Cir.1977); *National Football League v. Governor of Delaware,* 435 F.Supp. 1372, 1389 (D.Del.1977). I therefore hold that plaintiff is not entitled to seek a declaration that CBI's marketing operation violates either 18 U.S.C. § 1302 or 39 U.S.C. § 3005. Accordingly, defendants' motion to dismiss plaintiff's eleventh claim for relief is allowed.

## V. Defendants' Motion to Deny Class Certification

Defendants' have argued for denial of class certification solely on the basis that plaintiff's claims should be referred to arbitration. Because the court in Part III has found that plaintiff's claims are not properly referable to arbitration, defendants' motion for denial of class certification is dismissed.

## ORDER

For the foregoing reasons, it is hereby ORDERED:

(I) Defendants' Motion to Dismiss First Amended Complaint or, in the Alternative, to Stay These Proceedings as to any Remaining Claims, and to Deny Class Certification (Docket No. 16, filed September 28, 1992) is ALLOWED in part and DENIED in part, as follows:

(A) Defendants' Motion to Stay Proceedings Pending Arbitration is DENIED;

(B) Defendants' Motion to Dismiss First Amended Complaint is ALLOWED in part and DENIED in part, as follows:

(1) Defendants' motion to dismiss plaintiff's first claim for relief (§ 12(1) of the Securities Act of 1933) is DENIED;

(2) Defendants' motion to dismiss plaintiff's second claim for relief (§ 12(2) of the Securities Act of 1933) is DENIED;

(3) Defendants' motion to dismiss plaintiff's third claim for relief (§ 10(b) of the Securities Exchange Act of 1934) is DENIED;

(4) Defendants' motion to dismiss plaintiff's fourth claim for relief (18 U.S.C. § 1962(a)—civil RICO) is ALLOWED;

(5) Defendants' motion to dismiss plaintiff's fifth claim for relief (18 U.S.C. § 1962(c)—civil RICO) is ALLOWED;

(6) Defendants' motion to dismiss plaintiff's sixth claim for relief (18 U.S.C. § 1962(d)—civil RICO) is ALLOWED;

(7) Defendants' motion to dismiss plaintiff's seventh claim for relief (common law fraud and deceit) is DENIED;

(8) Defendants' motion to dismiss plaintiff's eighth claim for relief (false advertising in violation of N.Y.Gen.Bus. Law § 350) is DENIED;

(9) Defendants' motion to dismiss plaintiff's ninth claim for relief (declaration of illegal chain distributor scheme in violation of N.Y.Gen.Bus.Law § 359–fff) is ALLOWED;

(10) Defendants' motion to dismiss plaintiff's tenth claim for relief (deceptive acts and practices in violation of N.Y.Gen.Bus.Law § 349) is DENIED; and

(11) Defendants' motion to dismiss plaintiff's eleventh claim for relief (declaration of illegal postal lottery in violation of 39 U.S.C. § 3005) is ALLOWED.

(C) Defendants' Motion to Deny Class Certification is DISMISSED;

(II) Plaintiff's Motion for Leave to File Supplemental Memorandum in Opposition to Defendant's Motion to Dismiss (Docket No. 31, filed January 4, 1993) is ALLOWED; and

(III) A conference has been scheduled for Monday, June 7, 1993.